Joseph VORACHEK, Georgetta Vorachek, Bernadine Mahon, and Lynette O'Linn, State ex rel. Citizens State Bank of Lankin, Plaintiffs and Appellees,

v.

CITIZENS STATE BANK OF LANKIN, a North Dakota Corporation, LaVerne V. Gaarder, personally and as Personal Representative of M.W. Vorachek Estate, W.J. Vorachek, and Roger Vorachek, Defendants and Appellants.

Civ. No. 11239.

Supreme Court of North Dakota.

March 4, 1988.

Miller, Norman, Kenney & Williams, Moorhead, Minn., for plaintiff and appellee Joseph Vorachek; argued by Michael J. Williams.

Mack, Moosbrugger, Ohlsen, Dvorak & Carter, Grand Forks, for plaintiff and appellee Georgetta Vorachek. Appearance by John H. Moosbrugger.

Fleming, DuBois & Trenbeath, Cavalier, for plaintiffs and appellees Bernadine Mahon and Lynette O'Linn; argued by Neil W. Fleming.

Brink, Sobolik, Severson, Vroom & Malm, Hallock, Minn., for defendant and appellant Citizens State Bank of Lankin; argued by Dennis M. Sobolik.

Pearson & Christenson, Grand Forks, for defendant and appellant LaVerne V. Gaarder, personally and as Personal Representative of M.W. Vorachek Estate; argued by Garry A. Pearson.

Hamilton & Flaten, Grand Forks, for defendant and appellant W.J. Vorachek; argued by R. Lee Hamilton.

Roger Vorachek, pro se.

GIERKE, Acting Chief Justice.

Citizens State Bank of Lankin, LaVerne Gaarder, Roger Vorachek, and W.J. Vorachek appeal from various orders and a judgment striking their joint answer, counterclaim, and cross-claim. We reverse and remand for further proceedings.

Citizens State Bank of Lankin ["Bank"] is a family-owned banking corporation with its principal place of business in Lankin, North Dakota. Plaintiffs Joseph Vorachek, Georgetta Vorachek, Bernadine Mahon, and Lynette O'Linn are minority shareholders, together holding 367 shares of the 1250 total authorized shares. Defendants LaVerne Gaarder, Roger Vorachek, and W.J. Vorachek hold 768 shares,

and each is an officer, director, and full-time employee of the Bank. With the exception of John Shaft, who owned 10 shares of stock and served on the board of directors and as corporate attorney for the Bank, all shareholders in the Bank are related.

This litigation is apparently the result of a long-standing family feud. The plaintiffs' complaint alleges that the defendants have received excessive compensation from the Bank in the form of salaries, bonuses, loan write-offs, and other job-related benefits. The complaint further alleges that the defendants wasted corporate assets and converted corporate assets for their personal use. The plaintiffs' prayer for relief demanded, among other things, money damages, an accounting, a declaration of dividends, removal of directors, punitive damages, receivership, and dissolution of the Bank. The defendants filed a joint answer, counterclaim, and cross-claim,[1] generally denying the allegations of the complaint and alleging that Joseph Vorachek and Georgetta Vorachek received excessive compensation when serving as officers, directors, and employees of the Bank in previous years.

From its inception in 1982, the case has been characterized by a singular lack of cooperation in the discovery process. When the answers submitted to the plaintiffs' first set of interrogatories and request for production of documents were incomplete, the plaintiffs moved the court for an order compelling more complete responses. On February 9, 1984, the court issued an eighteen-page order requiring each defendant to provide specified information within thirty days. The defendants failed to comply with the order. The plaintiffs subsequently moved for a second order to compel, and on October 22, 1984, the court issued an order directing the defendants to comply with its earlier order within ten days. The defendants subsequently provided supplemental answers to the interrogatories, but these were again deemed to be inadequate. On February 17, 1985, the date of the pre-trial conference, the court for the third time ordered that the defendants comply with the plaintiffs' prior discovery requests.

On August 20, 1984, the plaintiffs served their second set of interrogatories and request for production of documents. The responses provided were deemed inadequate, and the court in its February 17, 1985, order required the defendants to fully comply with these requests for discovery. The court in its order also admonished that "All parties and their counsel shall conduct further discovery in a cooperative, professional, and hospitable manner."

Up until this point in the litigation all of the plaintiffs had been represented by attorney John Moosbrugger and all of the defendants had been represented by attorney John Shaft. In January 1985 plaintiff Joseph Vorachek retained attorney Michael Williams, who on April 1, 1985, served a request for production of documents upon the defendant Bank. Again there was no response and plaintiff Joseph Vorachek moved for an order compelling compliance. On June 26, 1985, the court ordered the defendants to produce the requested documents within ten days. Noting that "[t]his Court has been required to compel Defendants to produce information on more than one occasion," the court further ordered: "Accordingly, in the event that Defendants fail to comply with ... this Order within ten (10) days hereof, the Court shall enter an Order striking Defendant's [sic] Answer and entering a default judgment."

The defendants again totally ignored the court's order. After the passage of seven weeks, the plaintiffs on August 14, 1985, made a motion for sanctions pursuant to Rule 37, N.D.R.Civ.P. Following oral argument on the motion, the court, in findings of fact, conclusions of law, and order for judgment dated October 28, 1985, imposed Rule 37 sanctions striking the defendants' pleadings and granting a default

---

**1.** Although the pleading is denoted as an "Answer, Counter–Claim and Cross–Claim to Amended Complaint," no cross-claim was in fact pleaded. A cross-claim is a claim by one party against a co-party. *See* Rule 13(g), N.D.R. Civ.P.

judgment. In doing so, the court found that "Defendants remain in full violation of this Court's Order dated June 26, 1985, and in partial violation of this Court's Orders dated February 9, 1984, October 22, 1984, and February 17, 1985." The court further found that "Defendants have made no effort to comply with the discovery rules, and that Defendants have deliberately failed to comply with discovery rules and have willfully refused to obey the discovery Orders issued by this Court."

The court concluded that the "most severe sanctions" were appropriate, and ordered that the defendants' pleadings be stricken and that default judgment be entered on the issue of liability. The court also appointed Roger Reule as a "Court Monitor" to oversee operations of the Bank. In essence, the Court Monitor was to serve as a receiver and special master. Reule was given the title of "Executive Vice President" of the Bank and was given authority to hire employees, was to be consulted regarding significant transactions at the Bank, was to make a recommendation regarding disposition of the assets of the Bank, and was to calculate the amount of excessive compensation improperly paid to the defendants. The court also appointed Reule to the board of directors of the Bank.

The court further ordered that Roger Vorachek and W.J. Vorachek, the president and vice-president of the Bank, were to be excluded from the Bank premises and were to draw no compensation from the Bank. LaVerne Gaarder, the cashier of the Bank, was to continue operating the Bank but her salary was reduced from $120,000 per year to $30,000 per year. In a subsequent order, the court set the compensation of the Court Monitor at $10,000 per month.

Each of the individual defendants subsequently retained new counsel and each filed a motion seeking reconsideration of the court's findings of fact, conclusions of law, and order for judgment. The Bank, through attorney Shaft, also sought reconsideration. The court denied all of the motions for reconsideration by order dated April 3, 1986.

On April 25, 1986, counsel for LaVerne Gaarder had judgment entered on the October 28, 1985, order for judgment. On the same date, Gaarder filed her notice of appeal. The Bank and W.J. Vorachek filed notices of appeal on May 1, 1986, and Roger Vorachek filed his notice of appeal several months later, on September 22, 1986.

On May 9, 1986, the court issued an order modifying the powers and duties of the Court Monitor. Reule was discharged as Court Monitor, having completed his report, and an accounting firm was appointed as Court Monitor with very limited review functions. In addition, the court ordered that LaVerne Gaarder's salary be raised to $3,500 per month and returned authority to operate the Bank, including hiring of personnel, to the Bank's board of directors.

## I. JURISDICTION

### A. Motion to Dismiss

■ The plaintiffs have filed a motion to dismiss the appeal, asserting that because the judgment did not finally adjudicate all claims among all parties an order pursuant to Rule 54(b), N.D.R.Civ.P., was a prerequisite to an appeal. Although the court did not specifically refer to Rule 54(b), the court directed entry of judgment and expressly stated its intention that the judgment be appealable. Although explicit reference to Rule 54(b) is preferable, we have held that statements such as those in this case will satisfy the requisites of Rule 54(b) if it is clear from the record that the court intended to enter a final, appealable judgment. *See First Trust Company of North Dakota v. Conway*, 345 N.W.2d 838, 841–842 (N.D.1984).

■ The plaintiffs also contend that the judgment was not appealable because the trial court subsequently issued an "Order Correcting Clerical Error" which purported to "correct" the October 28, 1985, findings of fact, conclusions of law, and order for judgment by deleting those portions of the order which directed entry of judgment and awarded costs and fees. The "Order Correcting Clerical Error" was entered on April 28, 1986, three days after Gaarder's notice of appeal was filed. It is well set-

tled that jurisdiction of the supreme court attaches upon the filing of the appeal, and the trial court has no further jurisdiction in the matter. *See, e.g., Buzzell v. Libi,* 340 N.W.2d 36, 42 (N.D.1983). Because appellate jurisdiction had already attached, the trial court's subsequent order was ineffectual.

The Bank has moved for attorney's fees for defending against the motion to dismiss under Rule 38, N.D.R.App.P., asserting that the plaintiffs' motion to dismiss is frivolous. We deny the Bank's motion for attorney's fees.

### B. Roger Vorachek's Appeal

Although not specifically raised by any of the parties, we are compelled to consider the effect of the untimely filing of a notice of appeal by Roger Vorachek. The right of appeal in this state is governed by statute and is a jurisdictional matter which we will consider *sua sponte. Union State Bank v. Miller,* 358 N.W.2d 222, 223 (N.D.1984).

Roger's notice of appeal was filed on September 22, 1986, nearly six months after notice of entry of judgment was served. The attempted appeal was clearly untimely under Rule 4(a), N.D.R.App.P., and did not confer jurisdiction upon this court.

Although generally a party who has failed to perfect an appeal is bound by the judgment of the lower court, we have recognized an exception which applies when the rights of all parties are interwoven or when the erroneous legal decision of the lower court forms the basis for all of the parties' rights. Under those circumstances, the nonappealing party is entitled to the benefit of the appellate court determination. *Kuhn v. Kuhn,* 301 N.W.2d 148, 151 (N.D.1981). In the instant case, the rights of all defendants are interwoven and the erroneous legal decision of the trial court forms the basis for all of the parties' rights. We therefore conclude that justice requires that Roger is entitled to the benefit of our determination on this appeal even though he has not perfected an appeal. *Kuhn v. Kuhn, supra,* 301 N.W.2d at 151–152.

## II. RULE 37 SANCTIONS

The defendants allege that the trial court erred in striking their answer and counterclaim as a sanction for discovery violations. The individual defendants assert that the court had no authority to strike their personal defenses and enter default judgment against them, and all defendants allege that the court abused its discretion in employing the harshest sanction available under Rule 37, N.D.R.Civ.P.

### A. Sanctions Against Individual Defendants

The individual defendants, LaVerne Gaarder, Roger Vorachek, and W.J. Vorachek, assert that the trial court was without authority to impose sanctions upon them because the court's order was premised upon the failure to respond to a request for production of documents which was directed solely to the defendant Bank. They assert that they cannot be subjected to sanctions for the Bank's failure to respond.

Our Rule 37 is based upon Rule 37 of the Federal Rules of Civil Procedure, and we therefore have looked to interpretive federal caselaw for guidance in construing our rule. *E.g., Shark v. Thompson,* 373 N.W.2d 859, 863 (N.D.1985); *St. Aubbin v. Nelson,* 329 N.W.2d 874, 876 (N.D.1983). The federal courts which have considered the issue have recognized that generally a party will not be subjected to sanctions for a co-party's failure to comply with discovery, but an exception exists if the party controlled the actions of the non-complying party. *Patton v. Aerojet Ordnance Co.,* 765 F.2d 604, 606 (6th Cir.1985); *Letelier v. Republic of Chile,* 748 F.2d 790, 795 n. 2 (2d Cir.1984), *cert. denied,* 471 U.S. 1125, 105 S.Ct. 2656, 86 L.Ed.2d 273 (1985). Discussing this situation, Professor Moore notes that "if the co-parties are a corporation and its officer or managing agent sued in his individual capacity, his failure may serve as a predicate for the imposition of the sanction against both." 4A Moore's Federal Practice ¶ 37.05 at 37–107 n. 21 (2d ed. 1987). *See also Anderson v. Air West, Inc.,* 542 F.2d 1090, 1093 (9th Cir.1976);

*Flaks v. Koegel*, 504 F.2d 702, 710 n. 6 (2d Cir.1974); *cf. Fargo Women's Health Organization, Inc. v. Larson*, 391 N.W.2d 627, 633 (N.D.1986) ("It is also well established that an officer or agent of a corporation may be found in contempt of court if that officer or agent was responsible for the acts or inaction of the corporation that constituted the contempt.").

◼ The three individual defendants were the president, vice-president, and cashier, respectively, of the Bank. Each was a member of the board of directors and a full-time employee of the Bank. The three individual defendants managed and controlled the Bank, and any response to the discovery request would have to be performed by them. The trial court recognized as much, because its order of June 26, 1985, required that the *defendants* produce the documents requested from the Bank. All of the defendants were ordered to comply with the discovery request, and all were warned that failure to so comply within ten days would subject them to Rule 37 sanctions.[2] Under these circumstances, sanctions against the individual defendants were appropriate.

We also note that the trial court's order imposing sanctions was not, as the defendants allege, premised solely upon the failure to respond to the request for production of documents directed to the Bank and the corresponding order compelling production of those documents. In imposing sanctions, the trial court specifically found:

"5. Defendants remain in full violation of this Court's Order dated June 26, 1985, and in partial violation of this Court's Orders dated February 9, 1984, October 22, 1984, and February 17, 1985."

The court's orders of February 9, 1984, October 22, 1984, and February 17, 1985,

directed compliance with discovery requests to each of the defendants.

We conclude that the trial court was authorized to impose sanctions upon the individual defendants, as well as the defendant Bank, for the continuing pattern of discovery abuse presented in this case.

*B. Severity of Sanctions*

The defendants allege that the trial court abused its discretion in applying the harshest sanctions available under Rule 37 to the violations which occurred in this case.

Rule 37 allows a wide spectrum of sanctions for discovery violations, including striking of pleadings and entry of default judgment against the disobedient party. Rule 37(b)(2)(C), N.D.R.Civ.P. In a series of cases we have discussed the appropriateness of imposing dismissal, striking of pleadings, and/or entry of default judgment. *See Federal Land Bank of St. Paul v. Woell*, 415 N.W.2d 500 (N.D.1987); *Production Credit Association of Fargo v. Foss*, 391 N.W.2d 622 (N.D.1986); *Dakota Bank & Trust Co. of Fargo v. Brakke*, 377 N.W.2d 553 (N.D.1985); *Thompson v. Ziebarth*, 334 N.W.2d 192 (N.D.1983); *St. Aubbin v. Nelson*, 329 N.W.2d 874 (N.D. 1983); *see also Gohner v. Zundel*, 411 N.W.2d 75 (N.D.1987) (discussing application of sanctions under Rule 16, N.D.R. Civ.P., for failure to attend a pre-trial conference). In these cases we have developed standards to guide our review of a trial court's imposition of sanctions.

◼ The trial court is vested with broad discretion to impose an appropriate sanction for discovery abuses, and its decision will be set aside on appeal only if there has been an abuse of that discretion. Dismissal of an action or entry of a default judgment as a sanction for discovery abuse should be imposed only if there is a deliberate or bad faith non-compliance which con-

---

**2.** The defendants place great emphasis upon what is an obvious typographical error in the June 26, 1985, order. The order states that "in the event that Defendants fail to comply with ... this Order within ten (10) days hereof, the Court shall enter an Order striking Defendant's Answer and entering a default judgment." Although in the last instance the order refers to the possessive singular "Defendant's", it is clear from the context that the court intended the possessive plural "Defendants'". In all other aspects, the court's order refers to all defendants, and we construe its order as placing the individual defendants upon notice that their answer and counterclaim would be stricken if there was a failure to comply with the order.

stitutes a flagrant abuse of or disregard for the discovery rules. Sanctions must be tailored to the severity of the misconduct, and dismissal of an action or entry of default judgment should be used sparingly, only in extreme situations, and should not be used if an alternative, less drastic sanction is available and would be just as effective. Although the law favors resolution of disputes on the merits, that consideration must be balanced against the need to deter discovery abuses, promote efficient litigation, and protect the interests of all litigants. Therefore, the most severe sanctions must be available, not only to penalize those whose conduct is deemed to warrant those sanctions, but also to deter those who might be tempted to abuse the discovery process.

In the series of cases previously noted, we on some occasions affirmed dismissal, entry of default judgment, or striking of pleadings, and on other occasions reversed the imposition of such sanctions as an abuse of the trial court's discretion. The parties to this case have, understandably, attempted to align the facts of this case with the prior opinions of this court which support their respective positions. Although those cases may provide recognition of various factors which will be considered important in our decision to affirm or reverse the trial court's imposition of sanctions, we would caution against placing too much emphasis on similarities to previously decided cases. Rather, the rule envisions a case-by-case analysis, by the trial court and by this court, of all circumstances presented in a particular case.

As support for their contention that the sanctions imposed here were too harsh under the circumstances, the defendants allege that they substantially complied with the discovery requests, that they had valid objections to much of the material which was not provided, that any violation was due solely to the conduct of their attorney, and that their attorney had a conflict of interest which prevented him from aggressively representing their interests.

### 1) Substantial compliance

The defendants assert that they were in substantial compliance with the trial court's orders and had provided, or made available, most of the information sought by the plaintiffs through discovery. We are unaware of, and counsel for the defendants have not cited, any authority which suggests that "substantial compliance" is all that is required by the discovery rules. A party is not at liberty to "pick and choose" what information will be provided and what information will be withheld. Selective, substantial compliance is not enough; complete, accurate, and timely compliance is required by the rules. *E.g.*, *Chubb Integrated Systems Ltd. v. National Bank of Washington*, 103 F.R.D. 52, 61 (D.D.C.1984); *Fautek v. Montgomery Ward & Co., Inc.*, 96 F.R.D. 141, 145–146 (N.D.Ill.1982). If a party were allowed to withhold certain information because it had provided some of the requested information, the discovery process would be rendered useless.

We recognize, however, that the degree of a party's disobedience may be taken into consideration when determining the severity of the sanction to be imposed. Thus, a party who makes good-faith attempts to comply with discovery requests and orders may deserve a less harsh sanction than a party who totally ignores requests and orders for discovery. However, this provides little basis for relief to the defendants in this case. Although they initially provided inadequate responses to the plaintiffs' discovery requests, they subsequently failed to fully comply with those requests even though the court issued three separate orders directing them to do so. They also totally ignored the last discovery request, Joseph Vorachek's request for production of documents, even when the court threatened to strike their pleadings and enter default judgment if they failed to comply within ten days.

We also note that much of the defendants' "evidence" of substantial compliance is in the form of off-the-record correspondence between counsel and bare assertions in the appellate briefs. The defendants

apparently do not recognize the significance of our standard of review of a trial court's imposition of sanctions. We determine only whether, in the light of the information available to the trial court at the time, there was an abuse of discretion. *See St. Aubbin v. Nelson, supra,* 329 N.W. 2d at 877. Matters not contained in the record nor otherwise presented to the trial court cannot provide the basis for a determination that the court abused its discretion.

### 2) Objections to requested discovery

■ The defendants allege that they had valid objections to much of the requested material and that a lesser sanction was therefore appropriate for their failure to fully comply with the court's orders. The record demonstrates, however, that the defendants waived any objections they may have had to the requested discovery by failing to timely file objections and failing to oppose the plaintiffs' motions to compel disclosure.

The plaintiffs' first set of interrogatories to each defendant and first request for production of documents were served on August 9, 1983. The defendants failed to serve answers or objections within thirty days as required by Rule 33(a) and 34(b), N.D.R.Civ.P. When they subsequently served tardy answers to the interrogatories and responded to the request for production of documents, they included conclusory objections to certain questions. The plaintiffs filed a motion to compel more complete responses and the defendants failed to respond in any manner to the motion. The court on February 9, 1984, ordered the defendants to provide all of the requested information. As previously noted, the court was required to issue two more orders compelling responses to these same discovery requests, and the defendants to this day have not completely complied with those orders.

The plaintiffs' second set of interrogatories and a second request for production of documents were served on August 20, 1984. Again, the defendants failed to serve answers or objections within the required thirty days, but responses with various objections were served on November 30, 1984, after the plaintiffs had filed yet another motion to compel. When these responses were deemed inadequate, the trial court on February 17, 1985, ordered more complete responses.

The final discovery sought was plaintiff Joseph Vorachek's request for production of documents, served on April 1, 1985. The defendants filed no response within thirty days, nor did they respond to Joseph Vorachek's motion to compel or the court's order directing them to provide the documents. Not until the plaintiffs had moved for sanctions did the defendants note their objections to producing these documents.

The rules envision two permissible courses of action for a party who seeks to prevent discovery of certain information sought in interrogatories or in a request for production of documents. The party may serve written objections within thirty days pursuant to Rules 33 and 34, N.D.R. Civ.P., or the party may make a timely motion to the court for a protective order pursuant to Rule 26(c), N.D.R.Civ.P. The defendants did neither.

■ In the absence of an extension of time, the failure to serve an objection to an interrogatory or request for production within the thirty-day period prescribed by Rules 33 and 34 constitutes a waiver of any objection. *E.g., Davis v. Fendler,* 650 F.2d 1154, 1160 (9th Cir.1981); *Fretz v. Keltner,* 109 F.R.D. 303, 309 (D.Kan.1985); *Antico v. Honda of Camden,* 85 F.R.D. 34, 35–36 (E.D.Pa.1979); 8 Wright & Miller, Federal Practice and Procedure: Civil § 2173 (1970). Similarly, the failure to move for a protective order prior to the date set for discovery will ordinarily preclude a later objection. *E.g., United States v. International Business Machines Corp.,* 79 F.R. D. 412, 414 (S.D.N.Y.1978); 8 Wright & Miller, *supra,* at § 2035. Even if their objections had been preserved by timely filing of objections, their subsequent failure to respond to motions to compel would also constitute a waiver of their objections, because on a motion to compel the objecting party has the burden of persuading the

court that the interrogatory or request is improper. *See* 8 Wright & Miller, *supra,* at § 2173. Furthermore, failure to respond to a motion is deemed an admission that the motion is meritorious. *See* Rule 3.2(d), N.D.R.O.C. We conclude that the defendants waived any objections to the discovery requested, and therefore the meritoriousness of any possible objection does not provide a basis for a determination that the court abused its discretion in imposing sanctions.

### 3) Attorney fault and conflict of interest

The defendants assert that it was error for the trial court to strike their pleadings and enter default judgment against them because it was their attorney who failed to respond to the discovery requests, particularly when their attorney's inherent conflicts of interest are taken into consideration. Under the extremely unusual circumstances presented in this case, we agree.

 In his affidavit in support of the Bank's motion for relief from the judgment attorney Shaft in effect shouldered the blame for the failure to comply with discovery, attempting to excuse the misconduct because there were objections to disclosure of certain information and because, in his view, no further discovery could take place after he had filed the certificate of readiness.[3] Shaft also attempted to explain his view on the conflict of interest issue which had been raised. Even at that late date Shaft failed to fully comprehend the inherent conflicts of interest which arose from his representation of the defendants. Shaft should have been aware from the outset that he was representing clients with conflicting interests and that he was likely to be called as a witness.

The first count of the complaint alleges that the individual defendants fraudulently diverted the assets of the Bank to themselves through excessive salaries and bonuses. The relief sought under count one was for the individual defendants to "account for, restore, and pay over to Citizens State Bank of Lankin" the excessive salaries and bonuses. If the plaintiffs prevailed on this theory the individual defendants would be required to return excess salaries and bonuses, and any recovery would inure to the benefit of the Bank. Shaft should have realized the adverse positions his clients had been placed in and withdrawn his representation.

Additionally, because Shaft served on the Bank's board of directors and acted as legal counsel throughout the period of alleged mismanagement of the Bank, there was a likelihood that Shaft would be called as a witness by either his clients or the plaintiffs, and his testimony would not have related solely to uncontested matters, mere formalities, or the value of legal services rendered to the Bank. Under these circumstances, Shaft should not have undertaken the representation.

 We have previously indicated that conflicts of interest of counsel might, under appropriate circumstances, require reversal of a judgment. *Southern Valley Grain Dealers Ass'n v. Board of County Commissioners,* 257 N.W.2d 425, 432 (N.D. 1977). Under the unusually compelling circumstances presented in this case, where the attorney had obvious, inherent conflicts of interest and the clients assert that the attorney failed to aggressively represent their interests because of those conflicts, we conclude that it was inappropriate to strike the defendants' answer and counterclaim and enter default judgment as a sanction for discovery abuses. We find that the trial court abused its discretion in imposing the harshest allowable sanctions under the circumstances presented in this case.

---

**3.** Shaft does not, however, explain why he totally failed to respond to the trial court's order to compel, which directed compliance within ten days or default judgment would be entered. If Shaft was operating under the assumption that the filing of the certificate of readiness precluded further discovery, the court's subsequent order compelling discovery should have alerted him that disclosure of the documents was required.

As for the objections noted in Shaft's affidavit, those objections had been waived by the failure to timely raise them.

We wish to make it clear, however, that these circumstances do not wholly exonerate the defendants for the flagrant violations of the rules which have occurred. Our holding goes only to the trial court's choice of sanctions, not to its authority to impose sanctions. On remand, the trial court will be authorized, if deemed appropriate, to impose lesser sanctions for the discovery abuses which have occurred in this case.

## III. AUTHORITY TO APPOINT MONITOR AND RESTRICT DEFENDANTS' OPERATION OF THE BANK

The defendants also challenge various other aspects of the judgment, including the court's authority to appoint a "Court Monitor," the amount of compensation paid to the monitor, the limitation placed upon LaVerne Gaarder's salary, and the exclusion from the Bank premises of Roger Vorachek and W.J. Vorachek.

Section 10–21–16(1)(b) and (d), N.D.C.C.,[4] grants the court authority to dissolve a corporation when there has been illegal, oppressive, or fraudulent conduct by those in control, or if corporate assets are being misapplied or wasted:

*"10–21–16. Jurisdiction of court to liquidate assets and business of corporation.*—The district courts of the state of North Dakota shall have full power to liquidate the assets and business of a corporation:

"1. In an action by a shareholder when any of the following is established:

\* \* \* \* \* \*

"b. That the acts of the directors or those in control of the corporation are illegal, oppressive, or fraudulent.

\* \* \* \* \* \*

"d. That the corporate assets are being misapplied or wasted."

4. Chapter 10–21, N.D.C.C., was repealed in 1985 and replaced with the new Business Corporation Act, Chapter 10–19.1, N.D.C.C. The new Act became applicable to all existing corporations on June 30, 1986, but existing corporations were also given the opportunity to elect to be governed by Chapter 10–19.1 after June 30,

Section 10–21–17, N.D.C.C., sets forth the procedure to be followed when dissolution of a corporation is sought, and specifically empowers the court to appoint a receiver pendente lite to preserve corporate assets and carry on corporate business.

Although Section 10–21–16 mentions only dissolution as a remedy for such misconduct, we have interpreted the statute to allow broad alternative equitable remedies not specifically provided for in the statute:

" 'Depending upon the facts of the case and the nature of the problem involved, various alternative remedies may be appropriate. Among those suggested are the following:

" '(a) The entry of an order requiring dissolution of the corporation at a specified future date, to become effective only in the event that the stockholders fail to resolve their differences prior to that date;

" '(b) The appointment of a receiver, not for the purposes of dissolution, but to continue the operation of the corporation for the benefit of all the stockholders, both majority and minority, until differences are resolved or "oppressive" conduct ceases;

" '(c) The appointment of a "special fiscal agent" to report to the court relating to the continued operation of the corporation, as a protection to its minority stockholders, and the retention of jurisdiction of the case by the court for that purpose;

" '(d) The retention of jurisdiction of the case by the court for the protection of the minority stockholders without appointment of a receiver or "special fiscal agent";

" '(e) The ordering of an accounting by the majority in control of the corporation for funds alleged to have been misappropriated;

1985. *See Balvik v. Sylvester,* 411 N.W.2d 383, 385 n. 2 (N.D.1987); *KBM, Inc. v. MacKichan,* 386 N.W.2d 914, 916, n. 1 (N.D.1986). It is conceded that the Bank did not make such an election, and therefore at all times pertinent to this appeal the Bank was governed by the prior law.

" '(f) The issuance of an injunction to prohibit continuing acts of "oppressive" conduct and which may include the reduction of salaries or bonus payments found to be unjustified or excessive;

" '(g) The ordering of affirmative relief by the required declaration of a dividend or a reduction and distribution of capital;

" '(h) The ordering of affirmative relief by the entry of an order requiring the corporation or a majority of its stockholders to purchase the stock of the minority stockholders at a price to be determined according to a specified formula or at a price determined by the court to be a fair and reasonable price;

" '(i) The ordering of affirmative relief by the entry of an order permitting minority stockholders to purchase additional stock under conditions specified by the court;

" '(j) An award of damages to minority stockholders as compensation for any injury suffered by them as the result of "oppressive" conduct by the majority in control of the corporation.' [Footnotes omitted.]" *Balvik v. Sylvester*, 411 N.W.2d 383, 388–389 (N.D.1987) (*quoting from Baker v. Commercial Body Builders, Inc.*, 264 Or. 614, 631–633, 507 P.2d 387, 395–396 (1973)).

The plaintiffs in this case have alleged fraudulent and oppressive conduct by the defendants and misapplication of corporate assets. Therefore, if the plaintiffs ultimately prevail in this litigation, equitable remedies under Sections 10–21–16 and 10–21–17, as outlined in *Balvik v. Sylvester, supra*, would be available to the trial court.

The extraordinary remedies utilized by the trial court in this case were included in a judgment which entered default on the issue of liability against the defendants. These provisions were apparently intended by the court as interim relief in contemplation of dissolution of the corporation or a forced buy-out of the minority shareholders' interests. The record indicates that this relief was based entirely upon the entry of default on the issue of liability. We have, however, held that imposition of default was in error, and have thereby displaced the foundational basis for those remedies. Therefore, the extraordinary remedies provided in the judgment must also be reversed.[5]

We are, however, not in the best position to determine the appropriate relief which will be necessary upon reversal of the judgment. For example, it appears that the court monitor has been paid by the Bank for services provided, as ordered by the trial court. The defendants suggest that the monitor's fees should be reduced, or returned to the Bank, or reimbursed by the plaintiffs. Also at issue is the salary cut ordered for LaVerne Gaarder, and the effective discharge of Roger Vorachek and W.J. Vorachek from their positions at the Bank. However, because of the unusual nature of these issues, fashioning appropriate relief may be (as eloquently stated by Justice Sand) "as difficult as trying to 'unring a bell.' " *See Phoenix Assurance Co. of Canada v. Runck*, 317 N.W.2d 402, 408 (N.D.), *cert. denied*, 459 U.S. 862, 103 S.Ct. 137, 74 L.Ed.2d 117 (1982). Any attempt by this court to fashion relief on appeal would be significantly hampered by the lack of record evidence regarding the post-judgment occurrences related to these matters. Although the parties on appeal have presented much "off-the-record" support for their positions, proper determination of these issues requires a full consideration of the facts, including matters occurring after the filing of this appeal. We also note the parties' allegations that various aspects of these issues have been rendered moot. Again, these assertions are largely based upon off-the-record expressions of post-judgment occurrences. We therefore believe that it is most appropriate to remand these matters to the trial court for its determination.

---

**5.** Because it is clear that the relief in this case was entirely ancillary to the trial court's entry of default on the issue of liability, we find it unnecessary to address whether appointment of a receiver or other injunctive relief would have been appropriate under Section 10–21–17, N.D. C.C., without the entry of default.

We also wish to ensure upon remand that there is prompt, complete compliance with the prior discovery orders. We therefore order that the defendants fully and completely comply with the trial court's orders of February 9, 1984, October 22, 1984, February 17, 1985, and June 26, 1985, by serving complete responses to the prior discovery requests upon all plaintiffs, and filing those responses with the trial court, within thirty days of issuance of the mandate in this case. Each of the individual defendants is responsible to ensure that appropriate responses are filed on behalf of the Bank. If the defendants in any respect fail to comply with this provision, the trial court shall be authorized to strike all pleadings of the defendants and again enter default judgment on the issue of liability.

We reverse the judgment of the district court and remand for further proceedings in accordance with this opinion.

VANDE WALLE, MESCHKE and LEVINE, JJ., and VERNON R. PEDERSON, Surrogate Justice, concur.

VERNON R. PEDERSON, Surrogate Justice, sitting in place of ERICKSTAD, C.J., disqualified.

LEVINE, Justice, concurring specially.

I write specially, probably to reassure myself, to point out what we do not hold.

The trial court was well within its authority to impose sanctions upon all of the defendants for their persistent disregard of the trial court's clearly stated and repeated orders compelling discovery. Because of the conflict of interest, however, we hold that the sanction of default is too harsh and constitutes an abuse of discretion.

We do not hold that a trial court is obligated to ferret out conflicts of interest sua sponte. Ordinarily, a motion to disqualify the errant attorney or to withdraw is required. No such motion was made here. However, the conflict of interest was brought to the court's attention by defendants' attorney in his affidavit resisting sanctions for non-compliance with discovery orders, and more squarely by de-

fendants' new attorneys in their motions to reconsider the sanction of default.

There are, of course, a number of consequences that may flow from an attorney's conflict of interest. These include professional discipline, disqualification from further representation in a case, reversal of a judgment, and an action for legal malpractice. *See* Annot., Propriety of Corporate Representation, 1 A.L.R.4th 1124; Annot., Attorney—Former Client, 52 A.L.R.2d 1243. In reversing the judgment, I do not believe we are imposing upon a trial court a duty to consider, on its own motion, the existence and effect of a conflict of interest when it decides which discovery sanction to impose. Only because the trial court was apprised of the conflict, did it abuse its discretion in disregarding the inherent and actual prejudice to defendants occasioned by the conflict.