KBM, INC., a corporation, Plaintiff and Appellee,

v.

Alan K. MacKICHAN, Defendant and Appellant.

Civ. No. 11070.

Supreme Court of North Dakota.

May 13, 1986.

Vaaler, Gillig, Warcup, Woutat, Zimney & Foster, Grand Forks, for plaintiff and appellee; argued by Carol E. Harrang.

Bruce E. Bohlman, Grand Forks, for defendant and appellant.

MESCHKE, Justice.

Alan MacKichan appeals from a judgment ordering him to sell all shares of his stock in KBM, Inc. (KBM) to that corporation for the sum of $100.28 per share. We affirm in part, reverse in part, and remand for further proceedings to determine the proper purchase price for MacKichan's stock.

KBM is an engineering and architectural firm located in Grand Forks. MacKichan became associated with KBM in 1962, and when the business was incorporated in 1969 he became a stockholder. MacKichan served as secretary/treasurer for the corporation until 1982 when he lost that position and was not reelected as a director of the corporation. MacKichan, believing that he no longer carried an effective voice in the management of the company, wrote a letter of resignation which was accepted by the board of directors effective February 28, 1983.

At the time of MacKichan's resignation, a stockholders agreement was in effect. Under the agreement, an employee who terminates his employment with the corporation must first offer to sell all shares of his stock to the corporation for the book value of the stock determined as of the end of the corporate fiscal year preceding the date of termination. The corporation must respond to such offer within 60 days. Any shares of stock not purchased by the corporation must then be offered to the remaining shareholders for the same price as offered to the corporation. The shareholders have 60 days in which to respond to that offer. For any unsold stock, there is an additional 60-day period for negotiation of a sale "mutually satisfactory to all parties." The stockholders agreement further provides that if the parties are unable to reach an agreement on the unsold stock, "the corporation shall be liquidated and the assets distributed to the stockholders in proportion to their stockholdings."

MacKichan held 1,000 shares of KBM on the effective date of his resignation. The parties agree that under the stockholders agreement the appropriate date for determining book value of the stock is February 28, 1982, and that the book value on that date was $100.28 per share.

As required by the stockholders agreement, MacKichan offered to sell his shares of stock to the corporation for $100.28 per share. In a mutually agreed-upon exchange between KBM and MacKichan, the corporation accepted 84 shares of MacKichan's stock for which the corporation gave MacKichan title to his company automobile. The parties accepted the $100.28 per share valuation as the basis of that exchange. However, the corporation did not purchase MacKichan's remaining 916 shares of stock during the 60-day period allotted for that purpose. Rudolph Kuchar, KBM's president, asserted that the corporation was unable to purchase the remaining stock during that period because there was not adequate information available at that time to determine whether such a purchase would require use of funds in excess of earned surplus in violation of statutory restrictions.

MacKichan, as required by the stockholders agreement, then offered his shares of stock to the individual corporate shareholders for $100.28. No shareholder bought any of MacKichan's stock during the 60 days allotted for that purpose. KBM concedes that during this 60-day period the corporate officials learned that the corporation's fiscal condition would allow such a purchase without statutory violation. During the following 60-day period, the parties were unable to reach a mutually satisfactory agreement with regard to the sale of the stock.

Thereafter, KBM filed an action requesting the court to order MacKichan to sell his remaining 916 shares of stock to the corporation for $100.28 per share. MacKichan filed a counterclaim requesting the court to grant specific performance of the stockholders agreement by ordering liquidation of the corporation and distribution of its assets to the stockholders. The trial court entered a judgment ordering MacKichan to sell his remaining shares of stock to the corporation for $100.28 per share. On appeal, MacKichan asserts that the trial court erred in refusing to grant his request of specific performance to liquidate the corporation.

█ Forced dissolution of a corporation is a drastic remedy which should be invoked with extreme caution and only when justice requires it. *See Hockenberger v. Curry*, 191 Neb. 404, 215 N.W.2d 627 (1974). That principle is implicit in the statutory law of this State which sets forth the limited circumstances under which a court may order involuntary dissolution of a corporation and the forced liquidation of its assets at the instance of a shareholder.[1]

---

1. No statute applies directly to this case. Section 10–21–16, N.D.C.C., identifies the limited circumstances in which a shareholder has been able to obtain involuntary liquidation of a corporation:

    "The district courts of the state of North Dakota shall have full power to liquidate the assets and business of a corporation:
    1. In an action by a shareholder when any of the following is established:
    a. That the directors are deadlocked in the management of the corporate affairs and the shareholders are unable to break the deadlock, and that irreparable injury to the corporation is being suffered or is threatened by reason thereof.
    b. That the acts of the directors or those in control of the corporation are illegal, oppressive, or fraudulent.
    c. That the shareholders are deadlocked in voting power, and have failed, for a period which includes at least two consecutive annual meeting dates, to elect successors to directors whose terms have expired or would have expired upon the election of their successors.
    d. That the corporate assets are being misapplied or wasted."

    The 1985 Legislative Assembly substantially revised the North Dakota Business Corporation Act [1985 Sess.Laws, Ch. 147] which revision is codified as Chapter 10–19.1, N.D.C.C. It appears that numerous sections of the revised act were derived from the Minnesota Business Cor-

Forcing a majority of the shareholders to terminate an enterprise they wish to continue is a severe measure, and its consequences can be compounded by the triggering of complex and substantial tax effects.

It is well settled that specific performance of an agreement is an equitable remedy which will not be granted unless it is clearly shown that the legal remedy of damages is inadequate. *Williamson v. Magnusson*, 336 N.W.2d 353 (N.D.1983). The person seeking specific performance has the burden of proving he is entitled to it, and the trial court's decision in that regard will not be overturned unless the court has abused its discretion. *Wolf v. Anderson*, 334 N.W.2d 212 (N.D.1983).

The stockholders agreement provides that if the parties are unable to reach an agreement for the sale of the terminating employee's stock during the final 60-day negotiation period then the corporation shall be liquidated. MacKichan, as the result of a court-ordered liquidation, would receive a proportionate share of the distributed corporate assets. In essence then, liquidation would result in MacKichan receiving a monetary compensation measured by the liquidated value of his share of the assets of the corporation. Thus, we see no reason why, and MacKichan has failed to

demonstrate any reason why, the remedy of damages would be inadequate in this case. We conclude, therefore, that the trial court did not abuse its discretion in denying MacKichan's specific performance request to liquidate the corporation.

We further conclude, however, that the trial court did err in requiring MacKichan to accept the agreed-upon book value for his shares, because that damage award would not necessarily compensate MacKichan in a manner substantially equivalent to a proportionate receipt of assets upon liquidation.

In formulating a damage remedy in this case, it is crucial that the award assure that the corporation deal in good faith in acquiring the terminating employee's stock and that monetary compensation to the employee be made substantially equivalent to that which would result from recognizing the validity of the liquidation provision. If MacKichan can obtain neither specific performance of the liquidation provision nor equivalent damages, there would be no incentive for the corporation to deal in good faith to purchase the stock during the contractual purchase period.

We conclude, therefore, that MacKichan is entitled to damages in an amount the greater of: (1) the agreed-upon purchase

---

porations Act, Chapter 302A, Minn.Stat.Ann. Chapters 10–19, 10–20, and 10–21, N.D.C.C., were repealed as part of the 1985 revision of North Dakota's corporate law.

Pursuant to Section 10–19.1–04, N.D.C.C., the provisions of Chapter 10–19.1, N.D.C.C., are applicable to all existing corporations after June 30, 1986. However, existing corporations were given the opportunity, under Section 10–19.1–03, N.D.C.C., to be governed by Chapter 10–19.1, N.D.C.C., after June 30, 1985. It appears that KBM did not make such an election; consequently, Chapter 10–19.1, N.D.C.C., is inapplicable for purposes of this appeal.

Some of the new provisions of Chapter 10–19.-1, N.D.C.C., may be relevant to future cases involving shareholder agreements and available remedies:

Section 10–19.1–83, N.D.C.C., recognizes as "valid and specifically enforceable" written shareholder agreements relating to corporate

control, corporate liquidation or dissolution, and relations among shareholders.

Section 10–19.1–115, N.D.C.C., provides in relevant part as follows:

"1. A court may grant any equitable relief it deems just and reasonable in the circumstances or may dissolve a corporation and liquidate its assets and business: [in certain circumstances]

\* \* \* \* \* \*

"3. In determining whether to order equitable relief or dissolution, the court shall take into consideration the duty which all shareholders in a closely held corporation owe one another to act in an honest, fair and reasonable manner in the operation of the corporation and the reasonable expectations of the shareholders as they exist at the inception and develop during the course of the shareholders' relationship with the corporation and with each other."

price under the stockholders agreement, which in this case is the book value of $100.28; or (2) the fair value of MacKichan's shares of KBM as of the effective date of MacKichan's resignation, February 28, 1983.[2] This damage remedy should provide incentive for the corporation to deal in good faith to acquire a terminating employee's stock while providing the employee with adequate compensation substantially equivalent to that which would result from enforcement of the contract liquidation provision. The timing of this determination of fair value should forestall any potential that the corporation might manipulate factors relevant to determining the value which it must pay to avoid forced liquidation, as well as guard against any benefit or loss to the shareholder from ongoing corporate activities in which he did not participate.

Thus, we affirm that part of the judgment denying MacKichan's request for specific performance, we reverse that part setting book value as the purchase price for MacKichan's stock, and we remand for a determination of the fair value of MacKichan's stock as the purchase price for KBM to avoid liquidation.

ERICKSTAD, C.J., and LEVINE, GIERKE and VANDE WALLE, JJ., concur.

---

**2.** Compare Sections 10–19.1–87 and 10–19.1–88, N.D.C.C., which provide for payment of "the fair value" of shares to a dissenting stockholder under certain circumstances, and authorize court action for "determination of the fair value of the shares and ... judgment against the corporation for the amount of the fair value as of the day prior to the day on which the vote was taken approving the action" from which the shareholder dissents.