KBM, INC., Corporation, Plaintiff and Appellee,

v.

Alan MacKICHAN, Defendant and Appellant.

Civ. No. 880276.

Supreme Court of North Dakota.

March 27, 1989.

Vaaler, Gillig, Warcup, Woutat, Zimney & Foster, Grand Forks, for plaintiff and appellee, argued by Alan B. Warcup.

Hamilton, Juntunen & Cilz, Grand Forks, for defendant and appellant, argued by Michael E. Juntunen.

GIERKE, Justice.

Alan K. MacKichan appeals from a judgment, entered after remand in *KBM, Inc. v. MacKichan,* 386 N.W.2d 914 (N.D.1986), ordering him to sell his 916 outstanding

shares of stock in KBM, Inc. [KBM] to that corporation for an agreed-upon book value of $100.28 per share. We affirm in part, reverse in part, and remand for recomputation of interest.

KBM is a closely-held engineering and architectural firm located in Grand Forks. MacKichan, an employee and stockholder of KBM, wrote a letter of resignation which was accepted by the board of directors effective February 28, 1983. At the time of MacKichan's resignation, a stockholders' agreement was in effect which required a stockholder who resigned from the corporation to first offer to sell all shares of his stock to the corporation for book value as of the end of the corporate fiscal year preceding the date of resignation. The agreement required the corporation to respond to that offer within sixty days. The stockholders' agreement required the stockholder to offer any shares of stock not purchased by the corporation to the remaining stockholders for the same price and allowed the remaining stockholders an additional sixty days to respond to that offer. The stockholders' agreement further provided that any remaining unsold shares of stock were subject to an additional sixty-day negotiation period between the corporation and stockholder for a "sale mutually satisfactory to all parties." If the corporation and stockholder were unable to reach a "mutually satisfactory" agreement on any unsold stock, the stockholders' agreement provided that the corporation would be liquidated and the assets distributed to the stockholders in proportion to their stockholdings. KBM and MacKichan agreed that the appropriate date for determining book value of the stock was February 28, 1982, and that the book value on that date was $100.28 per share.

As required by the stockholders' agreement, MacKichan offered to sell his stock to the corporation on February 28, 1983, for $100.28 per share, but KBM declined to purchase 916 shares of MacKichan's stock during the allotted sixty-day period. MacKichan then offered his shares to the individual corporate shareholders for $100.28 per share, but no shareholder accepted MacKichan's offer during the sixty

days allotted for that purpose. During the following sixty-day period, KBM and MacKichan were unable to reach a mutually satisfactory agreement with regard to the sale of the stock. However, on August 17, 1983, and within that sixty-day period for reaching a "mutually satisfactory" price, counsel for KBM wrote to counsel for MacKichan, stating that KBM had "decided to accept Mr. MacKichan's offer to sell his stock as contained in his letter dated February 28, 1983." However, MacKichan refused to sell his stock for that price at that time.

Thereafter, KBM sued MacKichan, requesting the court to order MacKichan to sell the 916 shares of stock to the corporation for $100.28 per share. MacKichan counterclaimed, seeking liquidation of the corporation and distribution of its assets to the stockholders as required by the stockholders' agreement. After the first trial, the court denied MacKichan's specific performance request to liquidate KBM and ordered MacKichan to sell his 916 shares of stock to KBM for $100.28 per share.

In *KBM, Inc. v. MacKichan, supra,* we concluded that the trial court did not abuse its discretion in denying MacKichan's specific performance request to liquidate the corporation because the remedy of damages was adequate. We concluded, however, that the court erred in requiring MacKichan to accept the agreed-upon book value for his shares because that would not necessarily compensate MacKichan in a manner substantially equivalent to a proportionate receipt of assets upon liquidation. We said:

"In formulating a damage remedy in this case, it is crucial that the award assure that the corporation deal in good faith in acquiring the terminating employee's stock and that monetary compensation to the employee be made substantially equivalent to that which would result from recognizing the validity of the liquidation provision. If MacKichan can obtain neither specific performance of the liquidation provision nor equivalent damages, there would be no incentive for the corporation to deal in good

faith to purchase the stock during the contractual purchase period.

"We conclude, therefore, that MacKichan is entitled to damages in an amount the greater of: (1) the agreed-upon purchase price under the stockholders agreement, which in this case is the book value of $100.28; or (2) the fair value of MacKichan's shares of KBM as of the effective date of MacKichan's resignation, February 28, 1983. This damage remedy should provide incentive for the corporation to deal in good faith to acquire a terminating employee's stock while providing the employee with adequate compensation substantially equivalent to that which would result from enforcement of the contract liquidation provision." *KBM, Inc. v. MacKichan, supra,* 386 N.W.2d at 917–918.

On remand MacKichan and KBM each presented testimony from certified public accountants about the fair value of the stock. MacKichan's CPA, Frederick Bredemeier, testified as to the fair value of the stock using "cash flow" and "retained earnings" methods. Bredemeier opined that the KBM stock was worth $118.19 per share using the cash flow method and $135.46 per share using the retained earnings method. Bredemeier further testified that the retained earnings method more closely stated the fair value of the shares of KBM stock.

KBM's CPA, Cornelius Whalen, provided extensive testimony about the methodology he used for arriving at a fair value for the KBM stock. Based in part on KBM's earnings over the previous five years, Whalen testified that KBM had no excess earnings and therefore, in his opinion, no basis for goodwill or going-concern value. Whalen further testified that the fair value of the stock was $73.45 using the net asset method and that, after applying a 33% minority shareholder discount, the fair value for MacKichan's KBM stock was $49.21 per share.

Deposition testimony of MacKichan and Rudolph Kuchar, the president of KBM, was also presented to the trial court. Kuchar opined that KBM stock was worth approximately $50–60 per share on February 28, 1983, and $75.23 per share in an analysis dated July 31, 1983. MacKichan testified that the stock was worth $200 per share.

The court found that the best approach to the fair value of the stock was the net asset method without discounting for MacKichan's minority interest. The court therefore found that the fair value of the stock was $73.45 per share and because that amount was less than the agreed-upon book value of $100.28 per share, the court ordered KBM to pay MacKichan $100.28 per share for his 916 shares of stock. The court also required KBM to pay interest on that amount at the rate of 13% from February 25, 1983, to August 17, 1983, but determined that MacKichan was not entitled to interest after August 17, 1983, because he "could have taken his money then and avoided the entire costs of this action." MacKichan appealed, contending that the trial court erred in determining the fair value of his stock and in not awarding him interest after August 17, 1983.

## FAIR VALUE

MacKichan contends that the trial court erred in utilizing only the net asset method for determining fair value of the stock. He argues that the court's use of only the net asset method ignores KBM's value as a going concern, and therefore the court's valuation of stock is clearly erroneous. KBM responds that the trial court's determination of fair value is not clearly erroneous.

Determinations of the value of property are questions of fact subject to the "clearly erroneous" standard of Rule 52(a), N.D.R. Civ.P. *Hesch v. Hesch,* 308 N.W.2d 390 (N.D.1981); *Amoco Oil Company v. State Highway Dept.,* 262 N.W.2d 726 (N.D. 1978). A finding of fact is clearly erroneous when, although there is some evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake has been made. *Zajac v. Great American Insurance Companies,* 410 N.W.2d 155 (N.D.1987). We give due regard to the trial court's opportu-

nity to weigh the evidence, and simply because we may have viewed the evidence differently if we had been the initial trier of the case does not entitle us to reverse the lower court. *Id.* A finding of fact that comports with one of two permissible views of the weight of the evidence is not clearly erroneous. *Id.*

In this case the trial court was presented with evidence of more than one method for determining the fair value of KBM stock. *See Brown v. Hedahl's—Q B & R, Inc.,* 185 N.W.2d 249 (N.D.1971) [de novo review of fair value of stock of dissenting stockholder required weighing of market value, asset value, and earnings value.] Because KBM is a closely-held corporation, there was a lack of evidence of a market value for its stock, and the evidence presented to the trial court consisted of net asset value and retained earnings value. MacKichan's expert, Bredemeier, utilized the retained earnings method to determine the fair value of the stock. KBM's expert, Whalen, utilized the net asset method to determine the fair value of the stock. Whalen's testimony was, in part, based on his analysis of KBM's earnings over the previous five years, and he discounted his valuation to reflect a 33% minority shareholder discount. The trial court followed Whalen's approach without the minority stockholder discount, and thus did not strictly adopt either expert's opinion. We are convinced that the trial court weighed all the evidence, and we are not left with a definite and firm conviction that the court erred in adopting Whalen's valuation without the minority shareholder discount. Accordingly, we conclude that the trial court's finding of fact on the fair value of KBM stock is not clearly erroneous. Pursuant to the stockholders' agreement the court therefore properly ordered KBM to pay MacKichan $100.28 per share for his stock.

## INTEREST

The trial court awarded interest from February 25, 1983, to August 17, 1983, concluding:

"It appears that KBM accepted MacKichan's offer of February 28, 1983 on August 17, 1983.

"KBM thus offered to pay book value as of February 28, 1982. MacKichan rejected this offer and KBM was thus prevented from paying this amount to MacKichan.

"Thus, under the terms of N.D.C.C. Section 32–03–04, KBM had no obligation to pay interest after the offer was rejected and KBM was prevented by the act of MacKichan from paying.

\*    \*    \*    \*    \*    \*

"The Court will direct ... that interest is due in the amount of 13% on $91,-856.00 from February 25, 1983 until August 17, 1983. MacKichan could have taken his money then and have avoided the entire costs of this action.

\*    \*    \*    \*    \*    \*

"The Judgment should reflect that this decision is pursuant to N.D.C.C. 32–03–04 and not Rule 68, N.D.R.Civ.P."

MacKichan contends that the trial court erred in concluding that he was not entitled to interest after August 17, 1983. He argues that the stockholders' agreement contractually entitled him to interest at the prime rate until the date that he was paid for his stock or until a formal deposit was made with the clerk of court pursuant to Rule 67, N.D.R.Civ.P. He asserts that the trial court's decision ignores his right to contest the amount owed him and to appeal an adverse decision.

KBM responds that the trial court properly determined that MacKichan rejected the August 17, 1983 proposal, and, pursuant to Section 32–03–04, N.D.C.C., MacKichan therefore prevented KBM from paying him the amount subsequently determined by the court to be the fair value of the stock. In support of that position KBM also argues that on August 28, 1985, the day that judgment was entered after the first trial, it delivered a corporate check to the clerk of the district court for the amount of the first judgment plus interest to that date ($99,552.68) with instructions that the clerk was to receive MacKichan's

endorsed stock certificates and a satisfaction of judgment in exchange for the check.[1] KBM thus argues that it would be manifestly unfair to force KBM to pay interest after MacKichan rejected its offer on August 17, 1983. We disagree.

Section 32–03–04, N.D.C.C., provides:

*"32–03–04. Interest on damages.—* Every person who is entitled to recover damages certain or capable of being made certain by calculation, the right to recover which is vested in him upon a particular day, also is entitled to recover interest thereon from that day, *except for such time as the debtor is prevented by law or by the act of the creditor from paying the debt."* [Emphasis added].

█ We cannot construe MacKichan's rejection of KBM's belated offer on August 17, 1983, as an act which prevented KBM from paying the debt within the meaning of that statute. Pursuant to the stockholders' agreement, when MacKichan rejected that offer the parties were operating within the sixty-day period for negotiation of a "sale mutually satisfactory to all parties." The sixty-day period during which KBM could have purchased the stock pursuant to MacKichan's February 28, 1983 offer of $100.28 per share had long since passed, and MacKichan was therefore within his rights to reject KBM's belated offer because the price obviously was not "mutually satisfactory to all parties."

At no time did KBM attempt to deposit the money pursuant to Sections 9–12–24 and 9–12–25, N.D.C.C., or Rule 67, N.D.R. Civ.P., and it has had the benefit of that money from February 28, 1983. Even after the first judgment on August 25, 1985, and delivery of the corporate check to the clerk of court, KBM made acceptance of the money conditional upon MacKichan's endorsement of his stock certificates and satisfaction of judgment and did not avail itself of the procedures for deposit. It is well established that ordinarily, a party accepting the benefits of a judgment waives the right to appeal from that judgment. *E.g., White v. White,* 434 N.W.2d 361 (N.D.1989); *Tyler v. Shea,* 4 N.D. 377, 61 N.W. 468 (1894). KBM's argument would have required MacKichan to waive the right to appeal from the first judgment. Moreover, in cases such as this, where the procedures for deposit have not been followed, KBM's argument also would prevent a party from legitimately contesting a claim because of the risk of losing interest. We do not believe either of those results were intended by the Legislature in enacting Section 32–03–04, N.D.C.C., especially in view of the procedures for deposit which were available to KBM.

Under these circumstances, we conclude that MacKichan was entitled to interest from February 28, 1983, and the trial court erred in not allowing him interest after August 17, 1983. We therefore remand for a recomputation of interest.

The judgment is affirmed in part, reversed in part, and remanded for recomputation of interest.

ERICKSTAD, C.J., and VANDE WALLE, LEVINE and MESCHKE, JJ., concur.

---

1. In its brief to this court, KBM also refers to a Rule 68, N.D.R.Civ.P., offer of judgment, dated March 22, 1985, of an amount representing book value for the stock and interest at the *legal* rate from February 28, 1983, to August 17, 1983. Although a copy of that offer of judgment is in the appendix to the briefs to this court, it is not part of the record on appeal. *See* Rule 10(a), N.D.R.App.P.

The legal rate of interest is specified in Section 47–14–05, N.D.C.C., as six percent. *See Hirschkorn v. Severson,* 319 N.W.2d 475 (N.D. 1982). The judgment in this case is identical to the offer for judgment except that the judgment provided for interest at the rate of thirteen percent, instead of the legal rate, from February 28, 1983, to August 17, 1983. Assuming arguendo that Rule 68, N.D.R.Civ.P., precludes the recovery of subsequent interest, KBM's offer of judgment was less than MacKichan's recovery, and therefore the threshold for Rule 68 applicability was not met.

Additionally, the trial court specifically stated that its decision was based on Section 32–03–04, N.D.C.C., and not Rule 68, N.D.R.Civ.P., and, under these circumstances, we do not address any issues about Rule 68, N.D.R.Civ.P.