In the Matter of the ESTATE OF Christ DITTUS, Deceased.

Charles A. DITTUS and Elmer R. Dittus, Plaintiffs, Appellants and Cross–Appellees,

v.

Agnes MOORE and Hildegarde Guise, as Co–Personal Representatives of the Estate of Christ Dittus, and individually, Ellen Peraino, Myrna Jackson, Beverly Harrison and Joyce Gibbs, Defendants, Appellees and Cross–Appellants.

Civ. No. 920199.

Supreme Court of North Dakota.

March 11, 1993.

Mike Miller of Solberg, Stewart, Boulger, Miller & Johnson, Fargo, for plaintiffs, appellants and cross-appellees.

Richard E. Herr, Wishek, for defendants, appellees and cross-appellants.

LEVINE, Justice.

Charles A. Dittus and Elmer R. Dittus appeal from a judgment quieting title to two parcels of land in Logan County in the estate of Christ Dittus. Agnes Moore and Hildegarde Guise, as personal representatives of the estate, and Ellen Peraino, Myrna Jackson, Beverly Harris and Joyce Gibbs, individually, cross-appeal from the trial court's denial of their request for costs and disbursements. We affirm.

Christ Dittus died intestate in January 1975. He was survived by two sons and six daughters, each of whom is a party to this action. On November 22, 1972, Christ executed two deeds, conveying, respectively, one parcel of land in Logan County to his son Charles and a second parcel, also in

Logan County, to his son Elmer. Over the course of the next two days, Christ placed the deeds in a safe-deposit box, traveled to Charles' home in Omaha, Nebraska, told Charles about the deeds, gave Charles a key to the safe-deposit box and purportedly advised Charles that he could retrieve the deeds whenever he pleased. Christ, however, also retained a key to the safe-deposit box. Afterward, Charles, not Christ, informed Elmer of the existence of the deeds.

■ During the years preceding his death, Christ paid taxes on the Logan County property and kept the income it generated. The deeds remained in the safe-deposit box throughout Christ's lifetime. Several days after Christ's death, Charles, accompanied by Beverly, Joyce and Ellen, opened Christ's safe-deposit box and found, in addition to the deeds to himself and to Elmer, a third deed, conveying Christ's Fargo residence to Beverly, Joyce and Myrna.[1] None of the deeds was recorded.[2]

Charles and Beverly were appointed to co-administer the estate. During their tenure, nearly all of the affairs of the estate were settled in a reasonably timely manner, but an ongoing dispute over ownership of the Logan County property caused a decade-long delay. By 1989, the estate still had not been closed and Agnes and Hildegarde successfully petitioned to replace Charles and Beverly as administrators of the estate. The new administrators, in their continuing effort to finally settle and

distribute the intestate estate, moved for an order compelling Charles and Elmer to set forth any claims adverse to the estate. In response, Charles and Elmer commenced an action to determine title to the Logan County property pursuant to NDCC § 30.1–12–05 (UPC 3–105).[3]

■ After a trial on the matter, the county court, in its amended findings of fact, conclusions of law and order for judgment, determined that title to the property belonged to the heirs of the estate. That determination was based on the county court's conclusion of law that, "considering the totality of the circumstances, ... the decedent intended the deeds to operate as testamentary transfers."[4] Charles and Elmer appealed and the dispositive issue on appeal is whether Christ intended to transfer title to the property at the time the deeds were executed or at his death.

■ The interest transferred to a grantee by a deed does not vest until there is a delivery of the deed by the grantor, NDCC § 47–09–06, and acceptance of the deed by the grantee. *CUNA Mortgage v. Aafedt,* 459 N.W.2d 801 (N.D.1990). Therefore, a deed is of no effect unless it is delivered. *E.g., Jorgenson v. Crow,* 466 N.W.2d 120 (N.D.1991). But, delivery is of no avail unless the grantor effectuates it with the intent that the deed presently pass title to the grantee. *Id.* Accordingly, "[i]f the intent is not to transfer the interest until the grantor's death, there is no pres-

---

1. Ownership of the Fargo property is not disputed. It was sold and the proceeds of the sale were divided equally among the parties.

2. The recording of a deed may create a rebuttable presumption of its delivery. *E.g., Jorgensen v. Crow,* 466 N.W.2d 120 (N.D.1991).

3. Section 30.1–12–05, NDCC (UPC 3–105) says:
 Persons interested in decedents' estates may apply to the court for determination in the informal proceedings provided in chapter 30.1–12 through 30.1–23, and may petition the court for orders in formal proceedings within the court's jurisdiction including but not limited to those described in chapters 30.1–12 through 30.1–23. The court has exclusive jurisdiction of formal proceedings to determine how decedents' estates subject to the laws of this state are to be administered, expended,

and distributed, including actions to determine title to property alleged to belong to the estate and of any action or proceeding in which property distributed by a personal representative or its value is sought to be subjected to rights of creditors or successors of the decedent.

4. In the context of delivery of a deed, intent to deliver title can be inferred from words, acts or other objective facts, *see Jorgensen v. Crow,* 466 N.W.2d 120 (N.D.1991), and intent, therefore, is a question of fact. So, while the trial court found, as a matter of law, that Christ intended testamentary transfers, we nevertheless recognize and consider findings of fact regardless of the label that may be placed upon them. *Holcomb v. Zinke,* 365 N.W.2d 507 (N.D.1985).

ent delivery and the conveyance is merely an ineffective attempt at a testamentary transfer." 6A Powell on Real Property, ¶ 898[2] at 81A–77 (Rev.Ed.1993).

A trial court's determination that a grantor did or did not intend a present transfer of title to the land described in a deed is a finding of fact, *see* n. 2 *supra*, and will be upheld on appeal unless it is clearly erroneous. NDRCivP 52(a). "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made." *Blotske v. Leidholm*, 487 N.W.2d 607, 610 (N.D.1992).

We have previously addressed the issue of intent to presently transfer title in cases factually similar to this one. In *Frederick v. Frederick*, 178 N.W.2d 834 (N.D.1970), the grantor, joined by his wife, executed several deeds and placed them into a safe-deposit box. Sometime later, the grantees asked the grantor whether they could purchase a portion of his land and were told no purchase was necessary because the land had been deeded to them. The deeds, however, remained in the grantor's safe-deposit box until his death. The grantor also retained possession of the keys to the bank box until his death. Nearly a year after the grantor's death, his wife, in the presence of the grantees, removed the deeds and recorded them. Afterward, she returned the deeds to the safe-deposit box. The trial court determined that, under the circumstances, the deeds had been constructively delivered to the grantees. *See* NDCC § 47–09–09.[5]

We reversed, holding that there was "absolutely no evidence that the grantor intended to deliver the deeds to the grantees during his lifetime," that is, no evidence of an intent to relinquish

> "dominion or control over [the] deeds or to vest title to the property in the grantees. In fact, the record is clear that his intention was exactly the opposite. He retained possession of the deeds in his bank box, retained the keys to the box in his own possession, and paid the taxes on the land for the intervening years until his death." *Frederick*, 178 N.W.2d at 838.

In *First Nat'l Bank in Minot v. Bloom*, 264 N.W.2d 208 (N.D.1978), a case which was strikingly similar to *Frederick*, *supra*, we upheld a finding of no constructive delivery, stating:

> "Just as in *Frederick*, [the grantor], retained possession of the deed in his bank box, retained the keys to the box in his possession, and paid taxes on the land until he died. The statements of [the grantor] ... are also consistent with ... retaining [ ] fee ownership [of] the land." *Bloom*, 264 N.W.2d at 211.

Charles and Elmer acknowledge that this case is similar to *Bloom* and *Frederick* in that Christ retained possession of the deeds in his safe-deposit box and paid the taxes on the real estate until his death. They assert, however, that *Bloom* and *Frederick* are distinguishable because the grantor, Christ, gave Charles a key to the safe-deposit box and told him that the Logan County real estate belonged to him and Elmer and that the deeds to the respective parcels could be retrieved by them any time thereafter. Charles and Elmer argue that these facts show that, although Christ did not relinquish control over his safe-deposit box, he did intend to relinquish control over the deeds within that box.

To buttress their position, Charles and Elmer direct our attention to the trial court's summation, in its findings of fact, of evidence they allege shows Christ in-

---

**5.** Section 47–09–09, NDCC, says:

Though a grant is not actually delivered into the possession of the grantee, it is yet to be deemed constructively delivered in the following cases:

1. When, by the agreement of the parties, the instrument is understood to be delivered at the time of execution and the circumstances are such that the grantee is entitled to immediate delivery; or

2. When it is delivered to a stranger for the benefit of a grantee and his assent is shown or may be presumed.

tended to immediately transfer title to the property to them:

"8. The Decedent's sons, Elmer and Charles, furnished financial support to their parents and other family members during times of financial difficulty in the 40's and 50's, which included paying certain real estate taxes and a tax lien on the subject premises. . . .

"9. Christ Dittus, in various conversations during his lifetime with Charles and Elmer, referred to the farmland in question as theirs. . . ."

We agree that the record contains some evidence supporting Charles and Elmer's position. However, there is ample evidence supporting the trial court's decision that Christ did not intend to transfer title to the property to Charles and Elmer until he died and that the deeds, therefore, failed for lack of delivery. Christ retained a key to the safe-deposit box, retained the income generated by renting the property, and paid the taxes on the property. This evidence of Christ's exercise of dominion and control over the property strongly supports the inference that Christ did not, upon delivering the safe-deposit box key to Charles, presently intend to relinquish title to the Logan County farmland. Moreover, the delivery of but one of two keys to a safe-deposit box is inconclusive, without other evidence, of intent to presently transfer title.

■ Here, the best additional evidence of present intent is the statement Christ allegedly made to Charles when handing Charles a key to the bank box. That "evidence," however, is of no significance because the trial court did not find that such a conversation occurred; instead, the trial court merely recited that "Charles *testified* that his father told him when he gave him the key that he could remove the deeds at anytime." (Emphasis supplied.) The mere recitation of testimony is not equivalent to a finding of fact. *Evans v. Backes*, 437 N.W.2d 848 (N.D.1989).

The testimony of Roger Gackle, Christ's attorney, also supports the trial court's determination. Gackle described the conversation he had with Christ on the day Christ signed the deeds:

"[Christ] indicated to me that this was essentially a testamentary disposition of the property, that he was going to hold the deeds and then upon his demise it would be transferred. I discussed this with him before I prepared the deeds and indicated to him that . . . he should make delivery of [the] deeds [or] a constructive delivery by recording the same because of the fact that if he did die they were in his possession and there couldn't be any delivery produced, that these deeds may fail and I indicated to him at that time the better disposition of this would be by will. And we discussed together a will and . . . [he said] he would take it under consideration. . . ."

But, Charles and Elmer insist that Gackle's testimony is not inconsistent with their position. They claim Christ would have followed Gackle's advice and prepared a will if he had wanted the property to transfer to them at his death.

■ Nevertheless, after considering this evidence, and other evidence from which conflicting inferences might also be drawn, the trial court concluded that Christ "intended the deeds to operate as testamentary transfers." We give due regard to a trial court's opportunity to assess the credibility of the witnesses and weigh the evidence. *KBM, Inc. v. MacKichan*, 438 N.W.2d 181 (N.D.1989). For that reason, we have consistently held that a trial court's choice between two permissible views of the weight of the evidence is not clearly erroneous. *Id.* Because it is clear, upon reviewing the entire record, that there was evidence and inferences which would support either of two permissible views of Christ's intent to transfer title, we are not left with a definite and firm conviction that the trial court erred in drawing the inference that Christ intended testamentary transfers and did not, therefore, effectuate a present delivery of title to the property to Charles and Elmer. Because there is no delivery without the grantor's intent to presently transfer an interest in real property, our holding makes unnecessary a discussion of Charles and Elmer's

contention that the deeds were actually delivered under NDCC § 47–09–06 or, at a minimum, constructively delivered under section 47–09–09, NDCC.

■■■■■ On cross-appeal, the estate challenges the trial court's disallowance of costs and disbursements in the amount of $1,571.80, which includes the fees and expenses of an expert witness and the expenses Beverly incurred as a result of being compelled to travel from her Boise, Idaho, home to Fargo for a deposition. Rule 54(e), NDRCivP, directs that statutory costs and disbursements must be allowed. NDCC § 28–26–06(2) and (5), say:

"In all actions and special proceedings, the clerk shall tax as a part of the judgment in favor of the prevailing party his necessary disbursements as follows:

. . . . .

2. The necessary expenses of taking depositions and of procuring evidence necessarily used or obtained for use on the trial;

. . . . .

5. The fees of expert witnesses. Such fees must be reasonable fees as determined by the court, plus his actual expense. The following are nevertheless in the sole discretion of the trial court:

a. The number of expert witnesses who are allowed fees or expenses;

b. The amount of fees to be paid such allowed expert witnesses, including an amount for time expended in preparation for trial; and

c. The amount of costs for actual expenses to be paid such allowed expert witnesses."

The allowance of disbursements under section 28–26–06 lies within the sound discretion of the trial court and, therefore, will be overturned on appeal only if an abuse of discretion is shown. *E.g.*, *Wastvedt v. Vaaler*, 430 N.W.2d 561 (N.D.1988); *Richter v. Jones*, 378 N.W.2d 209 (N.D.1985). A trial court abuses its discretion when it acts in an arbitrary, unreasonable or unconscio-

nable manner. *State v. Schuh*, 496 N.W.2d 41 (N.D.1993).

The trial court gave no reasons for denying the costs at issue. Its failure makes our review difficult but because we are able to discern a rationale for the trial court's denial of costs, we uphold its exercise of discretion. Anticipating that Charles and Elmer might offer into evidence two documents, allegedly signed by Christ, authorizing Charles to gain access to Christ's safe-deposit box, the estate had present at trial an expert document examiner who was prepared to refute the genuineness of the documents. Charles and Elmer, however, did not offer the documents into evidence and the estate's expert, therefore, did not testify as an expert at trial. The record reveals that the estate likely would not have needed the expert present at trial had it acted reasonably with respect to a stipulation it prepared. That stipulation would have prohibited Charles and Elmer from offering the disputed documents into evidence and also would have prohibited all the contestants from calling handwriting experts. But, the stipulation contained an additional clause which would have permitted the estate to inquire about the documents, as well as Charles and Elmer's failure to produce them. Charles and Elmer, of course, refused to sign an agreement which would have allowed the estate to comment on their failure to produce that which all parties agreed not to produce.

In light of the fact that Charles and Elmer did not offer the documents into evidence, it appears likely that they would have stipulated not to offer the documents into evidence, thereby eliminating the estate's need to have present a document expert, if the estate's proposed stipulation had not contained the extraneous provision. Even though a party may be awarded costs and disbursements for the expert witness fees of an expert who does not testify at trial, *Wastvedt, supra*, we do not believe it was an abuse of discretion to deny those fees in this case.

■■■■ Beverly, a resident of Boise, Idaho, and a party-defendant in this action, was

compelled to travel to Fargo for a deposition after her motion for a protective order was denied. Section 28–26–06(2), NDCC, allows disbursements for the necessary expenses a party incurs in *taking* the deposition of another, but not for attending a deposition as the deponent. The trial court's denial of costs and disbursements for Beverly's travel expenses was not an abuse of discretion.

For the reasons stated, the judgment is affirmed.

VANDE WALLE, C.J., and NEUMANN, SANDSTROM and MESCHKE, JJ., concur.