Fred SCHELL, Plaintiff/Appellee,

v.

Frank SCHUMACHER,
Defendant/Appellant.

Civ. No. 9675.

Supreme Court of North Dakota.

Oct. 27, 1980.

Teevens, Johnson, Montgomery, P. C., Minot, for defendant/appellant; argued by Bruce R. Montgomery, Minot.

McIntee Law Firm, Towner, for plaintiff/appellee; argued by Michael S. McIntee, Towner.

PAULSON, Justice.

Frank Schumacher appeals from a judgment rendered against him by the Pierce County District Court on August 18, 1978. On June 23, 1978, a jury returned a verdict which awarded Fred Schell, the plaintiff and appellee, $9,500.00 as damages for conversion of grain and $1.00 as punitive damages. Schumacher appeals from a separation order issued by the Pierce County District Court which separated Schumacher's third–party action against Larry Gunter, Hayden Thompson, Mabel Erickson, and the H. H. Thompson heirs, from the action initiated by Schell against Schumacher. We affirm the judgment of the district court.

In 1966, Schumacher leased land in Pierce County for a 10–year term. Mabel T. Erickson, Ella T. McClintock, Mrs. Paul A. Goodman, and Malvin T. Thompson, the father of Hayden Thompson, executed the lease to Schumacher. The lease was to expire on September 15, 1975, and provided that Schumacher was to have an option to renew the lease for an additional 10–year period if all the parties agreed to the additional 10–year term. The land leased by Schumacher was described as follows:

"SE ¼ of Sec. 22; SW ¼ of Sec. 23; NE ¼ of Sec. 27; and NW ¼ of Sec. 26; all in Twp. 157 N., Rge. 74 W., Pierce County, North Dakota."

In 1954, Schumacher and the owners of the land reached an oral agreement by which Schumacher was to receive three–fourths of the harvest as his proportionate share of the harvest in exchange for his farming the land. In 1960, the owners of the land fixed a cash rental of $1,900.00 per year as the rental price for the land. The rental price figure remained the same until 1966, when 107 acres of the land were placed in the Soil Bank Program for ten years. In 1975, Hayden Thompson, on behalf of himself, Mabel Erickson, and the H. H. Thompson heirs, requested that Schumacher join them in placing 79 acres of the land in the Water Bank Program. Schumacher agreed to join the Water Bank Program. Schumacher contends that he re-

ceived assurances from the owners of the land that his summer fallow and cultivation work on the land would result in the extension of the lease.

In 1975, Schumacher's lease expired and on December 2, 1975, Hayden Thompson, Mabel Erickson and the H. H. Thompson heirs leased the property to Fred Schell and Larry Gunter. Schumacher was not paid for the summer fallow and cultivation work he had performed on the land. Schumacher claimed that Hayden Thompson, Mabel Erickson, and the H. H. Thompson heirs owned him $12,000.00 for the work that he had done on the land. In 1976, Schell cultivated the land and in the fall he swathed the crop in preparation for combining it. Because the debt owed to Schumacher had not been paid, Schumacher entered upon the land and harvested part of the crop. Schumacher informed Schell that the crop would be returned to Schell when Hayden Thompson, Mabel Erickson, and the H. H. Thompson heirs paid the debt they owed to Schumacher.

As a result of Schumacher's actions, Schell instituted this suit on September 3, 1976. On December 30, 1976, Schumacher commenced a third–party action against Hayden Thompson, Mabel Erickson, Larry Gunter, and the H. H. Thompson heirs. Schumacher also interposed a counterclaim against Schell which asserted that Schell had trespassed on Schumacher's property. On February 1, 1977, Schell presented a motion to separate the claim of Schumacher against Hayden Thompson, Mabel Erickson, Larry Gunter, and the H. H. Thompson heirs from the action instituted by Schell against Schumacher. Schell asserted the following reasons for separation of the actions in his affidavit in support of such motion to separate:

(1) The multiple actions would confuse the jurors;

(2) An adverse interest existed between Schell and the third–party defendants;

(3) The failure to separate the causes of action will cause irreparable damage to the plaintiff; and

(4) The action by Schumacher against Hayden Thompson, Mabel Erickson, Larry Gunter, and the H. H. Thompson heirs was improperly joined with Schell's action against Schumacher because the actions did not arise out of the same set of facts and circumstances.

On April 4, 1977, the district court held a hearing on Schell's motion to separate the causes of action. On April 7, 1977, the district court ordered that the causes of action be separated because Schumacher's third-party action contained issues which did not involve Schell and because the difficulty incurred in obtaining service of process upon Hayden Thompson would result in delay of the action brought by Schell. The action by Schell against Schumacher proceeded to trial. The jury returned a verdict against Schumacher and awarded Schell $9,500.00 as damages for conversion of Schell's grain and awarded $1.00 as punitive damages. In addition, costs were assessed against Schumacher, which costs totaled $263.08.

Schumacher's motions for judgment notwithstanding the verdict and for a new trial were denied by the district court. On July 25, 1979, Schumacher filed a notice of appeal with the clerk of the district court. In his notice of appeal, Schumacher stated that the following parts of the judgment were appealed to this court which:

(1) Severed the third-party defendants from the case;

(2) Instructed the jury as to the law to apply to the case;

(3) Allowed testimony as to the rumor that Hayden Thompson owned the land in question;

(4) Disallowed the opportunity of defendant to plead the statute of frauds under a general denial; and

(5) Held that the evidence admitted was sufficient to sustain the verdict.

On appeal, Schumacher presents two issues for our review. The issues concern whether or not separation of the action brought against the third-party defendants should have been allowed in the action by Schell against Schumacher and whether or not the trial transcript was incomplete to such a degree as to warrant a new trial. Rule 3 of the North Dakota Rules of Appellate Procedure specifies how an appeal to this court should be perfected. Subdivision (c) of Rule 3 specifies that the notice of appeal must designate the judgment or order from which the appellant appealed. Section 28–27–02 of the North Dakota Century Code specifies which orders made by the trial court may be appealed to this court. The district court's order to separate Schumacher's third-party claim from the action brought by Schell against Schumacher is not included as an appealable order under § 28–27–02, N.D.C.C.

Schumacher admits that the separation order issued by the district court is not appealable; however, Schumacher contends that he has appealed from the judgment entered against him on August 18, 1978. Schumacher's notice of appeal does not state that Schumacher appealed from the August 18, 1978, judgment, and the notice of appeal does not comply with the requirements of Rule 3(c) of the North Dakota Rules of Appellate Procedure. For purposes of this appeal, we will assume that Schumacher has appealed from the judgment entered against him on August 18, 1978, and also appealed from the separation order issued by the district court on April 7, 1977.[1] The notice of appeal used by Schumacher's attorneys is deficient in several respects and we do not condone the practice used in this case. Faced with an increasing number of appeals each year, we will rely

---

1. Rule 35(a), N.D.R.App.P., states:

"RULE 35–SCOPE OF REVIEW (a) *Civil appeals; intermediate orders.* Upon an appeal from a judgment, the supreme court may review any intermediate order or determination of the court below which involves the merits and necessarily affects the judgment appearing upon the record transmitted or returned from the trial court."

upon Rule 3(a) N.D.R.App.P., with increasing frequency in the future.[2]

█ The provisions of Rule 42(b), N.D.R. Civ.P., which provide for separation of third–party claims serve to prevent embarrassment, delay, or expense. Rule 42(b) is a necessary corollary to the liberal rules providing for joinder of actions and assertion of counterclaims, cross–claims, and third–party claims. The matter of separating trials, or trials of various claims or issues, lies within the discretion of the trial judge.[3] Thus, the district court's order separating Schumacher's action against the third–party defendants from Schell's action against Schumacher is reversible error only if an abuse of discretion is shown.[4] Because inclusion of the action brought by Schumacher would involve delay of Schell's action and because the issues involved in Schumacher's action did not concern Schell, we conclude that the district court did not abuse its discretion by separating Schumacher's claim against the third–party defendants from the action brought by Schell against Schumacher.[5]

The second issue which Schumacher urges is his contention that the transcript was incomplete and, therefore, that he is entitled to a new trial. This novel argument is based upon the fact that the district court reporter for this action later became ill and the illness precipitated the delay in the preparation of the trial transcript. Schumacher does not point out any inaccuracies in the transcript. The delay in the preparation of the transcript was partially the result of Schumacher's own delay in ordering the transcript. Schumacher contends that the incomplete sentences in the transcript indicate omissions in the court reporter's transcription of the testimony given at trial. During the course of a trial the parties to the trial often do not speak in complete sentences. In the absence of obvious omissions or glaring inconsistencies in the trial transcript, it is more probable that the court reporter accurately reported the testimony given at the trial than that the court reporter made omissions or errors in the transcription of the testimony. Because Schumacher does not demonstrate that errors were committed, we conclude that he was not prejudiced by the quality of the trial transcript in the instant case.[6]

█ Finally, Schell asks this court to award costs and attorneys' fees to him because the appeal by Schumacher is frivolous. Rule 38, N.D.R.App.P., provides that if this court determines that an appeal is frivolous, it may award just damages and single or double costs, including attorneys' fees.[7] While the issues presented in this appeal border upon being frivolous in nature, Schell's motion for attorneys' fees is denied. *Blue Arm v. Volk*, 254 N.W.2d 427 (N.D.1977). For reasons stated in this opinion, the judgment is affirmed.

ERICKSTAD, C. J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.

---

**2.** Rule 3(a), N.D.R.App.P., provides, in part: "RULE 3–APPEAL AS OF RIGHT–HOW TAKEN (a) *Filing the notice of appeal....* Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for such action as the court deems appropriate, which may include dismissal of the appeal.

**3.** 9 Wright, Federal Practice & Procedure, Civil §§ 2388, 2389; 5 Moore's Federal Practice ¶ 42.03. *See also Davis v. Freels*, 583 F.2d 337 (7th Cir. 1978); *Boe v. National Farmers' Organization*, 277 N.W.2d 291 (N.D.1979); *Jensen v. Peterson*, 264 N.W.2d 139 (Minn.1978).

**4.** *See Giese v. Engelhardt*, 175 N.W.2d 578 (N.D.1970).

**5.** The parties to this appeal incorrectly characterized the district court's order separating the trial of the claims by Schell and Schumacher as a "severance" order. The procedure authorized by Rule 42(b), N.D.R.Civ.P., should be distinguished from the procedure under Rule 21, N.D.R.Civ.P., which authorizes severance of claims.

**6.** In *Coan v. Plaza Equity Elevator Co.*, 60 N.D. 51, 232 N.W. 298 (1930), this court held that where no court reporter could be found to transcribe the notes taken at trial, the plaintiff is entitled to a new trial of the action. *See also* Annot., 19 A.L.R.2d 1098 (1951).

**7.** *See Blue Arm v. Volk*, 254 N.W.2d 427 (N.D. 1977); *Bellon v. Bellon*, 237 N.W.2d 163 (N.D. 1976).