Gary **ANDERSON** and Denise Anderson, Plaintiffs and Appellees,

v.

**OTIS ELEVATOR COMPANY,** Defendant and Appellant.

**Civ. No. 890304.**

Supreme Court of North Dakota.

March 27, 1990.

Serkland, Lundberg, Erickson, Marcil & McLean, Ltd., LaDonne R. Vik, Armond G. Erickson (argued), Fargo, for defendant and appellant.

Dosland, Dosland, Nordhougen, Lillehaug & Johnson, PA, Duane A. Lillehaug (argued), Moorhead, Minn., for plaintiffs and appellees.

GIERKE, Justice.

Otis Elevator Company (Otis) appeals from a district court order denying them a new trial based upon an alleged improper closing argument by opposing counsel. We affirm.

On February 26, 1986, Gary Anderson (Gary) was injured when the inside door of a freight elevator manufactured by Otis fell and struck him on the neck and shoulders. Otis admitted liability and the case was tried to the jury on the sole issue of damages.

During trial, Gary testified as to the extent that his injuries had altered his pre-injury normal day-to-day living. In addition to making work, sleep and relaxation difficult, Gary's marriage also suffered due to the decreased leisure time activity that Gary could spend with his wife, Denise. As recent as December of 1988, Gary had completed a three-week chronic pain management treatment program at the Sister Kenney Institute in Minneapolis. At the close of the trial, the jury returned a verdict in favor of Gary and Denise by awarding $42,500 for Gary's injuries, $12,500 for Denise's loss of consortium damages and $3,389.14 for their costs and disbursements.

Otis appeals the jury verdict contending that Andersons' counsel used an improper "per diem" argument in his closing argument to the jury. The language in the closing argument of which Otis claims was improper is as follows:

"I think one way to look at it is to look at quantifying the pain and the mental anguish and the form of how much time does it take Gary to deal with it every day, and to recover from its effects, and to put some numbers to it. Let's just assume that we have a total of not 44 years, but 30 years. I use that for two reasons; one, it's easier; and, two, it's to take into account that he might not work till he's 74, and those kind of things.

"If he has 30 years of living with this pain, at 365 days per year, I think that multiplies out to 10,950 days, or right around 11,000 days. How many of those are work days? I figure 7500. Subtract weekends, give him two weeks of vacation a year, 7500 workdays.

"What does he do on those workdays, at a minimum? He spends 20 to 40 minutes at home in the bathtub after work, he spends an hour or an hour and a half in the recliner, with the cervical pillow behind his head, taking the weight off. Two hours every workday? Conservatively, 15,000 hours.

"But is that all he does to compensate? We have the other days, the other 3500 days, the weekend days, the vacation days. We know he sometimes does some activity and rests or doesn't do something because he doesn't feel like he can do it. Let's just say an hour a day. And

I think the evidence will show that's also conservative. That's 3500 more hours. "Does it end there? Do you recall the evidence? It doesn't end there. He has a problem sleeping. He stays up later or, lately, he wakes up during the night and is awake. How about an hour for each of those 11,000 days for the sleep? I have 29,500 hours there. How about if I call it 30,000 hours. That's a way to look at it. How does he compensate and how much time does it take to compensate for the way he feels?

\* \* \* \* \* \*

"When you take these numbers, ladies and gentleman, you have to determine from the evidence what time is worth. How do you determine what time is worth, to try and determine the damages for Gary? There were two forms of evidence that you heard that put a value on time. One of them was what the Forum is willing to pay Gary to work, Now, it's ten dollars an hour. There was another form of evidence on the value of time that you heard, what the defense paid Mr. Friberg, $31 an hour, to do a 40–minute videotape that shows you what we told you he could do."

Counsel for Otis did not object during Andersons' counsel's closing argument until after the jury was instructed, sworn, and had retired from the courtroom to begin deliberations. The objection was made as follows:

"MR. ERICKSON [counsel for Otis]: I would just like to make a simple motion for the record—it may be late—but I saw today as close as I have ever seen a measuring-stick argument in North Dakota.

"THE COURT: I agree.

"MR. ERICKSON: I object to that. And I want that to go along with the record."

Promptly after the jury verdict was returned, Otis moved for a new trial arguing that Andersons' counsel had urged the jury to multiply the numbers he had given them by either Gary's wages or by Mr. Friberg's wages thus constituting an improper "per diem" argument. Conversely, Andersons argued that the closing argument was not improper because the argument did not assign a set monetary value to the number of days or number of hours that Gary suffered pain. Furthermore, Andersons contended that any numbers given to the jury were supported by the evidence heard in the case. Nevertheless, Andersons maintain that since counsel for Otis failed to make a timely objection, the issue was not properly preserved for appeal.

The trial court denied Otis' motion for a new trial because of the following reasons: (1) lack of a timely defense objection, (2) the closing argument was not an impermissible "per diem" argument, (3) Otis was not prejudiced by the closing argument, and (4) as to Denise's counterclaim, no grounds had been raised to permit a new trial. Relying upon *King v. Railway Express Agency, Inc.*, 107 N.W.2d 509 (N.D.1961), the court held that Andersons' counsel did not quote figures which were not in evidence or set up a formula which gave definite amounts for various periods of time. This appeal followed.

On appeal, Otis argues that the trial court erred in denying their request for a new trial because: (1) their objection made after the end of the closing arguments was timely for the purpose of preserving the issue for appeal, (2) the closing argument of Andersons' counsel was an impermissible "per diem" argument, (3) Otis was prejudiced by the alleged "per diem" argument, and (4) Denise Anderson's derivative consortium claim, in addition to Gary's claims, should have been subject to a new trial.

Because the disposition of this appeal centers on a procedural matter, we limit our focus to the action taken by Otis' counsel in objecting to the Andersons' counsel's alleged improper closing argument.

The decision to grant or deny a new trial rests within the sound discretion of the trial court, and its decision will not be set aside on appeal absent an affirmative showing of a manifest abuse of discretion. *Cullen v. Williams County*, 446 N.W.2d 250, 252 (N.D.1989) (citations omitted). An

abuse of discretion has been defined as an unreasonable, arbitrary or unconscionable attitude on the part of the trial court. *Fronk v. Meager*, 417 N.W.2d 807, 813 (N.D.1987).

 In general, a party must object at the time the alleged irregularity occurs; failure to object acts as a waiver of the claim of error.[1] *Andrews v. O'Hearn*, 387 N.W.2d 716, 730 (N.D.1986) (citations omitted). Error may not be predicated on an argument of counsel unless there was a timely objection and a ruling by the trial court. *Glatt v. Bank of Kirkwood Plaza*, 383 N.W.2d 473, 481 (N.D.1986). To take advantage of irregularities during trial, a party "must do so at the time they occur, to the end that the court may take appropriate action if possible to remedy any prejudice that may have resulted." *Glatt, supra*, at 481 (citing *Braun v. Riskedahl*, 150 N.W.2d 577, 583 (N.D.1967)).

In addition to a timely objection, this Court has held that to properly preserve the question of prejudice resulting from arguments of counsel for appellate review, counsel must ask the trial court to give the jury a cautionary instruction thereby admonishing the jury to disregard the improper portion of the argument. *State v. Marks*, 452 N.W.2d 298, 302 (N.D. 1990); *State v. Welch*, 426 N.W.2d 550, 553 (N.D.1988); *Andrews, supra*, 387 N.W.2d at 730; *Klein v. Harper*, 186 N.W.2d 426, 435 (N.D.1971).

Due to the fact that counsel for Otis neither made a timely objection nor requested a cautionary instruction from the trial court, we find that the trial court's refusal to grant a motion for a new trial upon an objection made only after the jury has retired for deliberations is not reversible error. *See Glatt, supra*, 383 N.W.2d at 481 (trial court's refusal to grant a motion for mistrial or to give a cautionary instruc-

tion upon an untimely objection through a motion for mistrial and request for a cautionary instruction made only after a jury has retired for deliberations is not reversible error).

Thus, for the foregoing reasons, we affirm the district court's order denying Otis a new trial. Accordingly, we decline to consider other arguments raised on this appeal.

ERICKSTAD, C.J., and MESCHKE and LEVINE, JJ., concur.

VANDE WALLE, J., concurs in the result.

---

1. "The only exception to the general rule requiring objection to improper closing argument is when the misconduct of counsel is so severe that it affects that party's substantial rights or constitutes a denial of a fair trial, thereby placing an independent duty upon the court to confine the attorney to the permissible bounds of argument, where necessary, and admonish the jury."
*Andrews v. O'Hearn*, 387 N.W.2d 716, 731 (N.D. 1986) (citations omitted). We believe, under the facts of this case, that this exception is not applicable to this appeal.