Mary K. OLSON, individually and as Personal Representative of the Estate of Tony D. Jones, Deceased, Plaintiff, Appellant and Cross–Appellee,

v.

GRIGGS COUNTY, North Dakota, Barnes County, North Dakota, Jerry Fogderud, and Irish Lawrence, Defendants, Appellees and Cross–Appellants.

Civ. Nos. 920088, 920089.

Supreme Court of North Dakota.

Nov. 5, 1992.

Paul D. Johnson, of Lee Hagen Law Office, Ltd., Fargo, for plaintiff, appellant, and cross-appellee.

Paul R. Oppegard, of Gunhus, Grinnell, Klinger, Swenson & Guy, Moorhead, Minn., for defendant, appellee, and cross-appellant Griggs County.

Daniel L. Hovland, of Fleck, Mather & Strutz, Bismarck, for defendant, appellee, and cross-appellant Barnes County.

James W. Wold, of Wold Law Office, Cooperstown, for defendants, appellees, and cross-appellants Jerry Fogderud and Irish Lawrence.

VANDE WALLE, Justice.

Mary K. Olson, individually and as personal representative of the Estate of Tony D. Jones, appealed from a district court judgment, entered after a jury verdict, dismissing her wrongful death action against Griggs County, Barnes County, Jerry Fogderud, and Irish Lawrence, and from an order denying her motion for a new trial. Griggs County and Barnes County cross-appealed from an order denying their motions for summary judgment and for a directed verdict. We affirm.

Mary's wrongful death action was based upon the circumstances involving the electrocution of her sixteen year-old son, Tony, at the scene of a one-car accident in Barnes

County. At approximately 12:30 a.m. on March 16, 1986, Tony was riding in the back seat of a car driven by Ron Mosholder when Ron lost control of the car and hit a power line pole in the ditch. The car broke the pole off at the ground, leaving two electrical wires suspended above the car's hood. The bottom wire was neutral and was about four feet ten inches above the ground. The top wire carried an electrical charge and was about six feet six inches above the ground.

Tony and another passenger in the back seat, Nancy Odegaard, were not physically injured in the accident and got out of the car. However, Ron and David Kelly, a passenger in the front seat, were seriously injured and could not get out of the car. Two passing motorists, Byron Haugen and Bonnie Gerszewski, took Nancy to Dazey to call for assistance while Tony remained at the scene of the accident.

Griggs County Deputy Sheriff Douglas Kiefert arrived at the accident scene at approximately one a.m. Within ten minutes, the Cooperstown ambulance, Sergeant David Messer of the North Dakota Highway Patrol, Barnes County Deputy Sheriff Terry Gray, the Valley City ambulance, and Officer Roger Haga of the North Dakota Highway Patrol arrived at the scene.

Ron was removed from the car at approximately 1:20 a.m. and transported by ambulance to Valley City. While the Cooperstown ambulance attendants were removing David from the automobile, Officer Haga took Tony down into the ditch to ask Sergeant Messer if Tony could go home. Officer Haga testified that he went back up to the highway to assist the ambulance crew and left Tony in the ditch with Sergeant Messer. Sergeant Messer and Tony were walking out of the ditch at approximately 1:35 a.m. when Tony came in contact with the charged wire and was electrocuted.

It is undisputed that the law enforcement officers and Tony were aware of the sagging electrical wires and that Tony had previously come in contact with the neutral wire at least once. During the evening,

Tony was warned on several occasions to stay away from the wires and the accident scene. There was evidence that Tony was "pretty hyper" and that, despite those warnings, he went down to the accident scene several times. It is also undisputed that the electrical company was not called to deactivate the wires until after Tony was electrocuted.

Prior to the car accident, Tony, Ron, David, and Nancy had been at a party near Hannaford. On the afternoon of March 15, Jerry Fogderud and Mark Mosholder, Ron's brother, were drinking at Irish Lawrence's house. Ron, who was eighteen years old, stopped at Lawrence's house and asked Fogderud to purchase some beer for him. Fogderud purchased a twelve-pack of beer for Ron and put the beer in Ron's car. Ron testified that he consumed that twelve-pack plus another twelve beers before the accident occurred. At the time of the accident, Ron had a blood-alcohol content of .26 percent and Tony had a blood-alcohol content of .01 percent.

Mary sued Griggs and Barnes County, alleging that, through their respective deputy sheriffs, they were negligent because they failed to have the power lines deactivated and they failed to adequately supervise Tony at the accident scene. Mary also sued Fogderud and Lawrence, alleging that they were at fault because they furnished alcohol to Ron. The trial court denied the counties' motions for summary judgment and for directed verdict under the immunity provisions of Sections 32–03–40 and 39–08–04.1, N.D.C.C.

In a special verdict, the jury found that Deputy Kiefert and Deputy Gray were not negligent; that Lawrence did not furnish intoxicating liquor to Ron; that Fogderud's furnishing of intoxicating liquor to Ron was not the proximate cause of Tony's death; that Ron's negligence was not the proximate cause of Tony's death; and that Tony's negligence was the proximate cause of his death. The jury also found that the highway patrolmen, Sergeant Messer and Officer Haga, were not negligent. The trial court denied Mary's motion for a new trial, and she appealed from the judgment

and from the order denying her motion. Barnes and Griggs County cross-appealed from the orders denying their motions for summary judgment and for a directed verdict under the immunity provisions of Sections 32–03–40 and 39–08–04.1, N.D.C.C.

## ADMISSIBILITY OF DEPUTY KIEFERT'S PRIOR STATEMENT

Mary argues that, under Section 31–08–07, N.D.C.C., the trial court erred in not allowing her to use a prior statement by Deputy Kiefert for impeachment. Section 31–08–07, N.D.C.C., provides:

> "*Copies of statements to be provided— When statement admissible.*—Every insurance adjuster, attorney, or any other person who takes the statement of an individual, who may be a party to possible litigation, for use or possible use in the preparation of or trying of a civil suit arising out of a tortious act, and whether said statement be in writing or by any device which records matters stated, other than depositions and court proceedings, shall provide a copy of the statement to the person from whom said statement was taken within thirty days of the making of the statement. No such statement shall be used directly or indirectly in connection with a civil action unless submitted to the person as required herein."

Mary took a statement from Deputy Kiefert on February 5, 1987. She admits that she did not provide Deputy Kiefert with a copy of that statement until May 1988. However, she asserts that she was not required to give him the statement "within thirty days of the making of the statement" because she did not allege that Deputy Kiefert's acts or omissions constituted "reckless or grossly negligent conduct, or willful or wanton misconduct" under Section 32–12.1–04(3), N.D.C.C.,[1] and, therefore, he was not a "party to possible litigation."

Under Mary's theory of this case, the counties were negligent because they failed to have the electrical wires deactivated and they failed to adequately supervise Tony at the accident scene. In his prior statement, Deputy Kiefert said that Tony was "keyed up" and "really excited" at the accident scene; that the wires were "real low" and there was a risk working around them; that while they were in the ditch Deputy Gray watched Deputy Kiefert so he "didn't get too close to the wires, you know, and vice versa"; that Tony had told Deputy Kiefert that he had bumped into the bottom wire and nothing happened; and that Tony was in the vicinity of the wrecked automobile "several times." Mary contends that if she had been able to use Deputy Kiefert's prior statement, she would have been able to successfully impeach his trial testimony that Tony was "no more [excited] than anyone involved in a traffic accident would be"; that the sagging electric wires did not interfere with efforts at the accident scene; that Deputy Kiefert did not remember seeing Deputy Gray near the accident scene; that Tony had told him that he had run into the bottom wire "several times"; and that Tony was in the vicinity of the wrecked automobile "only once."

■ Section 31–08–07, N.D.C.C., applies to "the statement of an individual, who may be a party to possible litigation" and is not directed at only individuals who are actually sued. The statute governs statements by individuals who are potential litigants. Although Mary did not sue Deputy Kiefert in his personal capacity, she could have sued him in his personal capacity by alleging that he was guilty of "reckless or grossly negligent conduct, or willful or wanton misconduct." When Mary took Deputy Kiefert's statement, he was an individual who may have been a party to possible litigation. Furthermore, Mary's argument ignores that, by statute, Section 32–12.1–04(1), N.D.C.C., actions for ordinary

---

1. Section 32–12.1–04(3), N.D.C.C., of the Political Subdivision Liability Act, provides, in part: "3. No employee may be held liable in the employee's personal capacity for acts or omissions of the employee occurring within the scope of the employee's employment unless the acts or omissions constitute reckless or grossly negligent conduct, or willful or wanton misconduct...."

negligence of an employee of a county are to be brought against the county. In such instance, we believe that Section 31–08–07, N.D.C.C., requires the statement be provided to the employee, or the county, or the purpose of the statute would be avoided. Because Kiefert's statement was not provided to him within thirty days, the language of Section 31–08–07, N.D.C.C., prohibits it from being used "directly or indirectly in connection with a civil action."

In any event, the issue at trial regarding Mary's use of Deputy Kiefert's statement pertained to whether or not the deputy sheriffs' conduct constituted negligence. Mary extensively examined Deputy Kiefert about the accident scene. Several other witnesses testified about the accident scene and Tony's condition. There was essentially no dispute that the accident scene was an emergency, life-threatening situation. The critical issue at trial was whether or not, under those circumstances, the deputy sheriffs acted reasonably. We believe the differences, if any, between Deputy Kiefert's prior statement and his trial testimony were insignificant in view of all of the evidence presented at trial about the deputy sheriffs' conduct at the scene of the accident. The trial court did not err in refusing to allow Mary to use Deputy Kiefert's prior statement.[2]

### JURY INSTRUCTIONS

■ Mary argues that the trial court erred in instructing the jury. Jury instructions must fairly and adequately inform the jury of the applicable law. *Spieker v. Westgo, Inc.*, 479 N.W.2d 837 (N.D.1992). Although a party is entitled to instructions which present that party's theory of the case, a trial court is not required to give instructions in the specific language requested by a party if the instructions given

fairly and adequately inform the jury of the law. *Id.* On appeal, jury instructions must be viewed as a whole, and if they correctly advise the jury of the law, they are sufficient although parts of them, standing alone, may be erroneous and insufficient. *Id.*

■ Mary argues that the trial court erred in refusing to instruct the jury that "[a] peace officer, such as a deputy sheriff, has a duty to keep any public property under his control in a reasonably safe condition, or he must take reasonable steps to prevent persons from entering onto such premises if a dangerous condition exists thereon." She asserts that she presented sufficient evidence from which the jury could have concluded that Deputies Kiefert and Gray failed to conduct themselves in accordance with their training and failed to exercise sufficient control over the accident scene.

The trial court instructed the jury that a deputy sheriff has a duty to "[g]ive such lawful orders and directions at motor vehicle accident scenes as may be necessary." The court also instructed the jury that a deputy sheriff may exercise the powers of a deputy sheriff in another county when responding to the request from another law enforcement agency for aid and assistance. The court further instructed the jury on the duty of care for ordinary negligence and the duty of a person in control of premises to exercise ordinary care to avoid exposing a lawful entrant to an unreasonable risk of bodily harm. NDJI–Civil # 105 and # 590. Mary's requested instruction was fairly and adequately covered by these instructions. We conclude that the trial court did not err in refusing to give an instruction in the specific language requested by her.

---

**2.** Mary has not argued that Section 31–08–07, N.D.C.C., is an unconstitutional intrusion on this court's authority to promulgate rules of evidence. *City of Fargo v. Ruether*, 490 N.W.2d 481 (N.D.1992); *Arneson v. Olson*, 270 N.W.2d 125 (N.D.1978). Rule 613, N.D.R.Evid., generally addresses the admissibility of a prior statement by a witness and is subject to the relevancy considerations of Rule 402, N.D.R.Evid., and the discretionary weighing of the statement's

probative value against confusion of the issues, unfair prejudice, waste of time, or needless presentation of cumulative evidence under Rule 403, N.D.R.Evid. *See State v. McLain*, 301 N.W.2d 616 (N.D.1981). We note that the source note for Rule 613, N.D.R.Evid., states that Section 31–08–07, N.D.C.C., was considered when this court promulgated the rules of evidence.

■ Mary contends that the trial court erred in refusing to give her requested jury instructions which were patterned after Restatement (2nd) of Torts, §§ 413(b), 416, 414 and 427. Mary's requested instructions essentially outlined the duties and responsibilities of an employer who hires an independent contractor to do work which involves a peculiar or unreasonable risk of physical harm to others. She asserts that sagging electrical wires at an accident scene presented a peculiar risk of harm and that Deputies Kiefert and Gray could not delegate their responsibility to protect Tony from that risk to the highway patrol.

■ The jury found that none of the law enforcement officials, including the highway patrolmen, was negligent. If they were not negligent, the counties would not be held vicariously liable for their acts. The trial court therefore did not commit reversible error in failing to give Mary's requested instructions. Moreover, Mary has presented no persuasive argument equating the duty of an employer who hires an independent contractor to the duty and responsibilities of a deputy sheriff at the scene of an automobile accident. Compare *McLean v. Kirby Co.*, 490 N.W.2d 229 (N.D.1992); *Schlenk v. Northwestern Bell Telephone Co., Inc.*, 329 N.W.2d 605 (N.D. 1983); *Peterson v. City of Golden Valley*, 308 N.W.2d 550 (N.D.1981). The trial court's instructions on duties of the highway patrol and a deputy sheriff, highway patrol immunity, ordinary negligence, duty owed to persons lawfully on the premises, cooperation between highway patrol and sheriffs, and responsibility for joint conduct adequately apprised the jury of the law.

Mary argues that the trial court erred in refusing to give her requested instructions which were based upon Restatement (Second) of Torts, §§ 876, 877, and 878, and her requested instruction entitled "Highway Patrol And Sheriff—Concurrent Duties." She contends that her requested instructions focused on the liability of one law enforcement officer for the negligent acts of another and were necessitated by the counties' contention that the highway patrol, rather than the deputy sheriffs, controlled the accident scene and that any negligence at the accident scene was attributable only to the highway patrol, which the court had instructed was immune from liability.

Because the jury found that the highway patrolmen were not negligent, the trial court did not commit reversible error in refusing to give those instructions. Moreover, the previously cited instructions given by the trial court, when read as a whole, fairly and adequately informed the jury of the law.

Mary argues that the trial court erred in refusing to give her requested instruction that a peace officer who is required by law to take custody of a person must use reasonable care to protect that person against unreasonable risk of physical harm. However, she has cited no authority for the proposition that the law enforcement officers were required to take Tony into custody. Her requested instruction was argumentative and was fairly and adequately covered by the instructions on ordinary negligence and on duty owed to persons lawfully on the premises.

Mary asserts that the trial court erred in refusing to give her requested instruction that peace officers are required to exercise the skill and knowledge normally possessed by members of the law enforcement profession within the state. We believe the trial court's instruction on ordinary negligence adequately advised the jury on this issue.

■ Mary argues that the trial court erred in refusing to give her requested instructions regarding dram shop liability which were based upon Restatement (2nd) of Torts, §§ 877(c) and 876. Mary's requested instructions essentially stated that an individual is liable for the wrongful act of another if the individual permits the other person's act on her premises, or if the individual gave substantial assistance or encouragement to the other person. She asserts that there was evidence presented at trial that Fogderud's violation of the dram shop statute occurred at Lawrence's house. She contends that the jury could

have reasonably concluded that Lawrence played an active role in furnishing beer to Ron and that Lawrence was liable for any harm caused by Fogderud's violation of the dram shop statute.

Because the jury found that Fogderud's furnishing of intoxicating liquor to Ron was not the proximate cause of Tony's death, we need not further consider whether or not the trial court committed reversible error in refusing to give Mary's requested instructions.

Mary asserts that the trial court's dram shop instructions were inconsistent and erroneous. She asserts that the underscored language in the following instructions required her to prove that Ron's intoxication resulted *solely* from the illegally furnished alcohol:

### "PROOF REQUIRED UNDER DRAM SHOP ACT

"The plaintiff, in order to recover in this action against either Jerry Fogderud or Irish Lawrence or both of them, must prove by a fair preponderance of the evidence: (1) that the defendants Jerry Fogderud or Irish Lawrence, or both of them, delivered or furnished to the minor person, Ron Mosholder, intoxicating beverages consisting of beer; (2) that the delivery of said beer as aforesaid caused or contributed to the intoxicated condition, if any, of said Ron Mosholder; (3) that said intoxication, if you find he was intoxicated *as a result of said delivery,* contributed to and was a proximate cause of the death of Tony Jones; (4) plaintiffs' damages.

### "NORTH DAKOTA DRAM SHOP ACT

"5–01–06. *Recovery of damages resulting from intoxication.*—Every wife, child, parent, guardian, employer, or other person who shall be injured in person, property, or means of support by any intoxicated person, or in consequence of intoxication, shall have a right of action against any person who shall *have caused such intoxication* by disposing, selling, bartering, or giving away alco-holic beverages contrary to statute for all damages sustained."

The language in subsection (3) of the first instruction must be read in conjunction with subsection (2), which stated that, in order to recover under the dram shop act, Mary must prove that the illegal delivery of beer caused, or contributed to, Ron's intoxicated condition. The instruction, as a whole, did not require Mary to prove that Ron's intoxication resulted solely from the illegally furnished alcohol. The second instruction must also be read in conjunction with the first instruction, which said that Mary must prove that the illegally furnished beer caused, or contributed to, Ron's intoxicated condition. The instructions, as a whole, correctly and adequately advised the jury of the law.

■ Mary contends that the trial court erred in instructing the jury on the doctrine of intervening cause. She asserts that Tony's death by electrocution was foreseeable and therefore Tony's negligence could not have been an intervening cause of the counties' negligence. The jury found that none of the law enforcement officers was negligent and thus did not reach the issue of intervening cause. Assuming, without deciding, that the trial court erred in giving an instruction on intervening unforeseeable cause, the error was harmless.

■ Mary argues that the trial court erred in instructing the jury on the effect of highway patrol immunity because the defendants failed to make a timely objection to testimony that the highway patrol was immune from suit. The trial court instructed the jury that the North Dakota Highway Patrol was immune from suit, but that the individual officers, Sergeant Messer and Officer Haga, were not immune from suit. The court instructed the jury that even though the highway patrol and individual officers were not named as parties, the jury was asked to determine whether or not they were at fault so that its ultimate apportionment of fault was fair. Mary has presented no persuasive authority for her argument that the defendants' failure to object to that testimony precludes an instruction on this issue.

Merely because there was not a timely objection to the introduction of evidence does not mean that a trial court cannot give an instruction about that evidence. Moreover, the instruction was a correct statement of the law and the trial court did not err in giving it.

### JURY VERDICT

Mary argues that the jury verdict was not supported by the evidence. Our review of questions of fact tried to a jury is limited to determining if, viewing the evidence in the light most favorable to the jury verdict, there is substantial evidence to support the verdict. *Dewey v. Lutz*, 462 N.W.2d 435 (N.D.1990). When there is conflicting evidence, we are bound by the jury verdict. *Hoovestol v. Security State Bank*, 479 N.W.2d 854 (N.D.1992).

There was conflicting evidence about the defendants' liability for Tony's death. The counties presented evidence that the accident scene was an emergency, life-threatening situation and that, under the circumstances, the deputy sheriffs acted reasonably. The counties also presented evidence that, under these circumstances, their officers had no duty to call the power company to deactivate the power lines. The jury could have reasonably found that the counties were not negligent. We conclude that the jury's verdict was not contrary to the evidence.

Lawrence presented evidence that she did not provide Ron with intoxicating liquor. Although Fogderud furnished Ron with intoxicating liquor, there was evidence, which, if believed, showed that Fogderud's furnishing of liquor was not the proximate cause of Tony's death. We conclude that, when viewed in the light most favorable to the verdict, the jury's verdict was supported by substantial evidence.

### PERSONAL BIAS AND CUMULATIVE ERROR

Mary contends that she was deprived of a fair trial because the trial judge was personally biased and prejudiced. She asserts the trial judge made it clear that her claim was meritless and communicated that view to the jury through "body language and adverse facial expressions." However, the court instructed the jury that "[n]o statement [made by the court] during the course of this trial is intended to indicate any opinion as to what the facts are, as you alone determine the facts." Moreover, there is no record of any of the alleged irregularities regarding "body language and adverse facial expressions." When the record does not allow for intelligent and meaningful review of an alleged error, the appellant has not carried the burden of demonstrating reversible error. *Cullen v. Williams County*, 446 N.W.2d 250 (N.D.1989).

Mary also argues that the doctrine of cumulative error requires a new trial. However, we are not persuaded that the cumulative effect of the alleged errors asserted by Mary requires a new trial.

In view of our disposition of the issues raised in Mary's appeal from the judgment, we cannot say the trial court erred in denying her motion for a new trial. *Dewey v. Lutz*, 462 N.W.2d 435 (N.D.1990).

### COUNTIES' CROSS–APPEAL

In their cross-appeal, the counties contend that, based on the immunity provisions of Sections 32–03–40 and 39–08–04.1, N.D.C.C., the trial court erred in failing to dismiss Mary's action against them. However, in view of our disposition of the issues raised in Mary's appeal, any resolution of those issues would be advisory. It is well settled that we do not render opinions on academic questions where no actual controversy exists. *Municipal Services Corp. v. Kusler*, 490 N.W.2d 700 (N.D. 1992); *In Interest of C.W.*, 453 N.W.2d 806 (N.D.1990). Accordingly, we decline to address the counties' argument.

We affirm the judgment and the order denying Mary's motion for a new trial.

ERICKSTAD, C.J., and LEVINE, MESCHKE and JOHNSON, JJ., concur.