Nancy SABOT, Plaintiff and Appellant,

v.

FARGO WOMEN'S HEALTH ORGANIZATION, INC., and George M. Miks, M.D., Defendants and Appellees.

Civ. No. 920205.

Supreme Court of North Dakota.

May 28, 1993.

Paul T. Crary (argued), Fargo, for plaintiff and appellant.

Jane C. Voglewede (argued), Vogel, Brantner, Kelly, Knutson, Weir & Bye, Ltd., Fargo, for defendant and appellee Fargo Women's Health Organization.

Dean A. Hoistad (argued), Gunhus, Grinnell, Klinger, Swenson & Guy, Moorhead, MN, for defendant and appellee George M. Miks, M.D.

NEUMANN, Justice.

Nancy Sabot appeals from an order[1] entered by the District Court for Cass County denying her motion for a judgment notwithstanding the verdict, or, in the alternative, a motion for a new trial. We affirm.

Sabot brought a medical malpractice action against Fargo Women's Health Organization (FWHO) and Dr. George Miks, alleging that Dr. Miks negligently and incompletely performed an abortion procedure on Sabot at FWHO's clinic. Sabot asserts that due to the incomplete and faulty procedure, she passed fetal tissue less than two days subsequent to the abortion, and that after witnessing this event, she experienced severe emotional distress. Sabot also claims that Dr. Miks did not properly administer anesthetic, causing her great physical pain during the procedure. Additionally, she alleges that following the negligent abortion, she experienced physical

---

1. We recognize, as Judge Eckert points out in his concurring opinion, that Sabot's notice of appeal fails to designate the document from which she is appealing. Thus, she has failed to comply with Rule 3(c), N.D.R.App.P., which directs appellants that their notice of appeal "shall specify," among other things, "the judgment, order, or part thereof appealed from." Judge Eckert has concluded that we should dismiss Sabot's appeal due to this failure to comply. We disagree. As we have previously stated, we only exercise the sanction of dismissal carefully when parties have not complied with appellate rules.

"Failure to comply with the Rules of Appellate Procedure may be, in the discretion of this court, a ground for dismissal of an appeal. Rules 3(a) and 13, N.D.R.App.P.; *Matter of Estate of Raketti*, 340 N.W.2d 894 (N.D. 1983). However, such a severe sanction is to be applied sparingly.... *Raketti, supra.*" *Dickinson Nursing Center v. North Dakota Dep't. of Human Services*, 353 N.W.2d 754, 756 (N.D. 1984). *See also Schell v. Schumacher*, 298 N.W.2d 474, 476–77 (N.D.1980) (even though the notice of appeal failed to specify which document the appellant was appealing from, this Court "assume[d] that [the appellant] [ ] appealed from the judgment").

difficulties and pain. Sabot further contends that FWHO did not adequately counsel her prior to the procedure, nor did they or Dr. Miks properly disclose to her the risks of abortion. The case was tried to a jury in the District Court for Cass County, and after two and one-half weeks of trial, the jury returned a verdict finding FWHO and Dr. Miks 0% negligent. Sabot moved for a judgment notwithstanding the verdict, or, in the alternative, a new trial. Upon denial of her motions, Sabot filed this timely appeal, which raises the following issues: (1) whether the jury instructions were incorrect, allowing for a new trial; (2) whether the district court's evidentiary rulings on rebuttal evidence were incorrect, allowing for a new trial; (3) whether the statements made by opposing counsel in closing arguments were prejudicial, allowing for a new trial; (4) whether the judge's conduct was biased, allowing for a new trial; and (5) if a new trial is awarded, whether there should be a different judge presiding over the new proceedings.

## I. JURY INSTRUCTIONS

Sabot challenges three different areas of jury instructions. The first area concerns informed consent of the patient and the doctor's duty to disclose the dangers of abortion. The second area involves damages allowable for emotional distress. The third and final area pertains to a defendant's liability for any pre-existing conditions of the plaintiff.

 When this Court scrutinizes jury instructions for error, we do so in light of the evidence presented to the jury, as established by the record on appeal. "Instructions of the trial court must be viewed in the light of the evidence on which they operate." *Mousel v. Widicker*, 69 N.W.2d 783, 790 (N.D.1955). *See also Perleberg v. Gen. Tire and Rubber Co.*, 221 N.W.2d 729, 733 (N.D.1974); *Willert v. Nielsen*, 146 N.W.2d 26, 30 (N.D.1966); *Grenz v. Werre* 129 N.W.2d 681, 690 (N.D.1964). Thus, for Sabot to be successful in her challenge to the instructions noted above, she must convince us by the evidence in the record that a prejudicial error occurred as a result of the instructions.

> "Where an appellant seeks to have a verdict of a jury in a civil case set aside because of erroneous instructions, he [or she] must establish *affirmatively by the record presented to the appellate court, that, under the evidence*, the jury might, and probably would have returned a different verdict if the erroneous instructions had not been given."

*Moe v. Kettwig*, 68 N.W.2d 853, 863 (N.D. 1955) (emphasis added).

The well-established rule is particularly significant in this case because the record on appeal is sparse, at best. There was two and one-half weeks of trial in this case. On appeal, Sabot furnished this Court with less than 100 pages of the trial transcript. Sabot submitted 24 pages from two in-chambers conferences held on the last two days of trial, and 23 pages from her direct examination (the only witness testimony we have on appeal). She also included 32 pages from another in-chambers proceeding in her appendix. That portion of the transcript had been ordered by FWHO and attached to its brief in opposition to Sabot's post-trial motion. In total, we have 79 pages of the trial transcript, which was estimated to be over 2,500 pages in whole. Needless to say, our review is severely hampered by this situation.

Rule 10(b), N.D.R.App.P., requires the appellant to file the trial transcript with this Court on appeal. In relevant part, it provides:

> "(b) The Transcript; Duty of Appellant to Order; Time for Ordering. If an appeal is taken in a case in which an evidentiary hearing was held, it is the duty of the appellant to order a transcript of the proceedings. Three copies must be ordered for the supreme court and one copy must be ordered for each party separately represented. The order must be served on the reporter and must be for a complete transcript of the proceedings, unless a stipulation is obtained from all affected parties specifying portions which are not required for the purposes of the appeal. If a party affected

by the appeal unreasonably refuses to stipulate to exclude from the transcript portions of the record not necessary to the resolution of issues raised by the appellant, the party proposing the stipulation may apply to the trial court for an order requiring the refusing party to pay for the unnecessary portions of the transcript and reasonable attorney's fees for making the application."

This Court has interpreted Rule 10(b) to allow appellants to proceed on a partial transcript as long as "the record on appeal allows for a meaningful and intelligent review of the alleged error." *Bye v. Elvick*, 336 N.W.2d 106, 109 (N.D.1983). However, appellants must be wary when choosing to submit incomplete transcripts. We have previously warned: "The appellant assumes the consequences and the risk for the failure to file a complete transcript. If the record on appeal does not allow for a meaningful and intelligent review of alleged error, we will decline review of the issue." *Lithun v. DuPaul*, 447 N.W.2d 297, 300 (N.D.1989) (citations omitted). *See also Rosendahl v. Rosendahl*, 470 N.W.2d 230, 231 (N.D.1991); *Cullen v. Williams County*, 446 N.W.2d 250, 252–53 (N.D. 1989).

■ Sabot asserts that she did not order the complete transcript because she could not afford the costs (approximately $7,125). She alleges that she tried to get the other parties to stipulate to a partial transcript, but Dr. Miks replied that he "absolutely" would not proceed with a partial transcript. Thus, she withdrew her motion for a stipulation to a partial transcript, and apparently abandoned any further attempts at legitimately proceeding with a partial transcript. Eventually, she proceeded with the 79 pages mentioned above. If Sabot believed that the other parties were behaving unreasonably to her request for a partial transcript, Rule 10(b) allowed her to "apply to the trial court for an order requiring [Dr. Miks and FWHO] to pay for the unnecessary portions of the transcript and reasonable attorney's fees for making the application." Rule 10(b), N.D.R.App.P. Sabot never made such an application.

Therefore, the fault she attempts to lay on the other parties is not compelling nor convincing to us. Sabot is bound by the portions of the transcript she has provided this Court on appeal, and it is with those pieces of evidence that we must evaluate the challenged jury instructions for error.

■ The first area of challenged instructions concerns informed consent of the patient and the doctor's duty to disclose the dangers of abortion. Sabot asserts that the instructions on these subjects were incomplete and misleading. In her appellate brief she states: "While the law as stated in the instruction may be a partial statement of the law which existed at the time of Plaintiff's abortion, it is a misleading and erroneous jury instruction because it does not reflect a complete statement of the law with regard to disclosures required of Defendants." Sabot does not contend that the law given in the instructions is incorrect, but that the omission of the rest of the applicable law in the instruction is incorrect. FWHO and Dr. Miks assert that the instructions were given as a result of some expert testimony introduced at trial, which we do not have in the record. While we agree with Sabot that the instructions do not appear to be a complete disclosure of North Dakota law on the subjects, we are unable to decide the legal sufficiency of the informed consent and disclosure instructions. Even if the instructions may have been erroneous, we cannot tell from the record provided us on appeal what prejudicial effect, if any, they had on the jury's deliberations. Sabot has failed to carry her burden of demonstrating, by the record, the prejudicial effect these instructions had on her case.

■ The same is true with the instructions in the other two areas of damages for emotional distress and liability for a plaintiff's pre-existing condition. While the instructions may have been erroneous, without a more complete and relevant record we cannot determine if the error was prejudicial. Furthermore, these instructions involve damages and proximate cause, issues the jury never reached after finding FWHO and Dr. Miks free from any negli-

gence. In such a situation, we have said: "[E]ven if [the instruction was] erroneous, [it] could not have been prejudicial to [Sabot], as the jury's determination of the liability issue precluded consideration of the question of damages." *Jore v. Saturday Night Club, Inc.*, 227 N.W.2d 889, 897 (N.D.1975). *See also Olson v. Griggs County*, 491 N.W.2d 725, 731 (N.D.1992); *Benedict v. St. Luke's Hosp.*, 365 N.W.2d 499, 504-05 (N.D.1985). Thus, without deciding, even if there was an error in the instructions on damages for emotional distress and a defendant's liability for a plaintiff's pre-existing condition, it was harmless error because the jury never reached those issues, having found FWHO and Dr. Miks free from any negligence.

## II. REBUTTAL EVIDENCE

■ Sabot's next contention on appeal is that the trial court erred in not allowing her to introduce a medical treatise and an insert from a lidocaine package on rebuttal. FWHO and Dr. Miks counter Sabot's argument by asserting that the evidence she wanted to solicit during rebuttal would have been more properly introduced during her case in chief. As long ago as 1954, this Court recognized that "[t]he admission in rebuttal of testimony which should have been offered in chief rests in the sound discretion of the trial court." *Clark v. Josephson*, 66 N.W.2d 539, 546 (N.D.1954). Without a more substantial record, we cannot determine if the evidence was the type that should have been introduced during Sabot's case in chief, and if it was, whether the trial court abused its discretion in ruling on this matter. By supplying us with an inadequate record, Sabot has failed to carry her burden of showing this Court prejudicial error on this issue as well.

## III. REMARKS IN CLOSING ARGUMENTS

■ The third issue Sabot raises on appeal is that Dr. Miks' counsel made improper and inflammatory remarks during his closing argument which inflamed the jury and prejudiced her case. We have no record of closing arguments, so we do not

know what was said. Sabot contends that Dr. Miks' counsel called her a "pro-life advocate" various times during his closing remarks to the jury, and that these remarks were sufficiently inflammatory to prejudice the jury against her. FWHO and Dr. Miks oppose this contention by arguing that Sabot failed to object to the remarks at the time they occurred. Thus, she is precluded from complaining of them on appeal. *See Anderson v. Otis Elevator Co.*, 453 N.W.2d 798, 801 (N.D.1990). Sabot acknowledges that there was no simultaneous objection to the remarks; however, she asserts that the remarks were "so severe" that they affected her "substantial rights" and constituted "a denial of a fair trial, thereby placing an independent duty upon the court to confine the attorney to the permissible bounds of argument, where necessary, and admonish the jury." *Andrews v. O'Hearn*, 387 N.W.2d 716, 731 (N.D.1986). However, without a record of the comments and the context in which they were made, it would only be a guessing game on our part to determine what effect, if any, the remarks may have had on the jury. On this issue also, we must conclude that Sabot has failed to show this Court prejudicial error in the record.

## IV. JUDGE'S CONDUCT

■ The fourth issue Sabot raises on appeal is that the judge's conduct during the trial illustrated his bias against her, and due to the judge's misconduct, she should be granted a new trial with a new judge. Sabot points to various events which she argues are demonstrative of the judge's misconduct. One such event occurred when the judge dismissed a juror after two witnesses came into chambers and testified under oath that they saw the juror interacting with a pro-life group outside of the courtroom. That in-chambers conference is one of the portions of the transcript submitted to us on appeal. During the conference, Sabot's trial attorney did not question the two witnesses, even though he was given at least two opportunities to do so. Also, when asked what he recommended in addressing the situation, he said: "I'll leave it in your discretion,

Your Honor." We have previously said that "a party must object at the time the alleged irregularity occurs; failure to object acts as a waiver of the claim of error." *Anderson v. Otis Elevator Co.*, 453 N.W.2d at 801. Thus, in the absence of an objection below, we will not consider the issue on appeal. Furthermore, Sabot waived her objection during the in-chambers conference when her trial attorney stated that he would abide by the court's good judgment. *Froemke v. Hauff,* 147 N.W.2d 390, 400–01 (N.D.1966).

█ Sabot also points to the trial court's retention of a juror on the jury after it was disclosed by Dr. Miks' counsel to the court that the juror was an employee of a client of the law firm to which Dr. Miks' counsel belonged. Apparently, the juror and Dr. Miks' counsel were unaware of the relationship during voir dire. Once again, there is no record of the discussions which took place upon this discovery, and there is no record of a simultaneous objection on Sabot's behalf. For these reasons, we cannot pass on the merits of this contention. Thus, the record fails to support Sabot's contention on this issue.

The last instance of misconduct pointed to by Sabot is the fact that the trial court did not, of its own volition, admonish Dr. Miks' counsel when he called Sabot a "pro-life advocate" during closing arguments. Such an action by the court is allowed in certain instances, as discussed above in *Andrews.* However, for the same reasons we could not reach the merits above in section III of this opinion, we cannot reach them here. The lack of an adequate and relevant record has completely hindered our review of this matter.

## V. DIFFERENT JUDGE IN A NEW TRIAL

The determination of the above issues precludes a new trial, and therefore, this issue is moot.

For the foregoing reasons, we affirm the order entered by the District Court for Cass County denying Sabot's motion for a judgment notwithstanding the verdict, or, in the alternative, a motion for a new trial.

SANDSTROM, Acting C.J., and MESCHKE, J., and LEE A. CHRISTOFFERSON, District Judge, concur.

ROBERT L. ECKERT, and LEE A. CHRISTOFFERSON, District Judges, sitting in place of VANDE WALLE, C.J., and LEVINE, J., disqualified.

ROBERT L. ECKERT, Judge, concurring.

Although I concur in the result reached by the majority, I would have dismissed Sabot's appeal because of lack of jurisdiction.

Sabot's "NOTICE OF APPEAL TO THE NORTH DAKOTA SUPREME COURT AS APPEL[L]ATE PROCEDURE RULE # 11 RECORD APPEAL" states:

1. Plaintiff Nancy Sabot did not receive a fair trial before a fair and impartial judge and or jury.

2. Plaintiff makes this appeal as the injured party who is on disability.

3. Plaintiff here makes demand for all or anu [sic] rights under Supreme Court rules of appel[l]ate procedure and so informs this low or in [crossed off] District Court: As they pertain to bond, transcript, or partial transcript.

4. Plaintiff here informs one and all she here orders from Cass County District Court Administrator a complete copy of civil case No. 89–91 transcript and five copies. Complete copies of this appeal, transcript order, notice of service to NORTH DAKOTA SUPREME COURT CLERK, COURT ADMINISTRATOR and attorney's for the defendants.

Joint Appendix, p. 165. A document entitled "SUPPLEMENTARY TO NOTICE OF APPEAL" states:

1) The Plaintiff asks the Supreme Court according to rule 2 of appel[l]ate procedure, that because this plaintiff is not a lawyer they suspend any rules that she may misunderstand or break

until she is able to retain legal counsel to resume legal matters on this case.

2) The Plaintiff asks according to Rule 10d of appel[l]ate procedure that the trial court extend the time to obtain and deliver the transcript to the Supreme Court. The plaintiff asks for the full 90 days at this point in time. If denied by the trial court plaintiff request[s] additional time be granted to her by the Supreme Court.

Joint Appendix, p. 167. The Rules of Appellate Procedure are not to be applied differently because the party is acting pro se. *Rosendahl v. Rosendahl*, 470 N.W.2d 230, 231 (N.D.1991). Accordingly, Sabot's notice of appeal is to be considered no differently than had it been drafted by an attorney.

The right of appeal in North Dakota is governed by statute, and is a jurisdictional matter which the Supreme Court will consider sua sponte. *Vorachek v. Citizens' State Bank of Lankin*, 421 N.W.2d 45, 49 (N.D.1988). See also North Dakota Constitution, Art. VI, sec. 6. Appeals are authorized from judgments. Section 28–27–01, N.D.C.C. Appeals to the Supreme Court may also be taken from several specified orders. Section 28–27–02, N.D.C.C. The Supreme Court has a duty to dismiss an appeal if the attempted appeal fails for lack of jurisdiction, even where the only defect is in the content of the notice of appeal specifying what judgment is being appealed. *Bye v. Federal Land Bank Ass'n.*, 422 N.W.2d 397, 399 (N.D.1988).

Examining the notice of appeal and the "supplementary" to the notice of appeal it appears that the only complaint directed toward the trial court was that "Plaintiff Nancy Sabot did not receive a fair trial before a fair and impartial judge and or jury." There was no designation that the appeal was being taken from the judgment or from a court order. Rule 3(c), N.D.R.App.P., requires that the notice of appeal designate the judgment, order, or part thereof appealed from. Although if the notice of appeal only cites an unappealable order for judgment, but the record contains a judgment consistent with the

order, the appeal will be considered in the interests of justice, *Olson v. Job Service North Dakota*, 379 N.W.2d 285, 287 (N.D. 1985), here there is no specific order or judgment stated from which an appeal may be taken.

The content of the notice of appeal is a factor in determining whether the Supreme Court has jurisdiction. The Supreme Court previously held that it lacked jurisdiction where a party appealed from orders denying a motion for summary judgment and granting the opposing party's motion for summary judgment but where the party did not appeal from the judgment itself. *First Nat. Bank of Hettinger v. Dangerud*, 316 N.W.2d 102, 103 (N.D.1982). (*Olson, supra,* effectively reversed this holding, but, as noted above, *Olson* does not apply to the present facts.) The order for summary judgment in *Dangerud* was held to be an intermediate order which is not appealable. *Id.* at 104. Because the notice of appeal did not state an appealable order, the Supreme Court held that it was without jurisdiction to hear the appeal. *Id.* However, the Supreme Court also noted that the notice of appeal must be served within 60 days of the judgment, and upon a showing of excusable neglect the trial court may extend the time by an additional 30 days. *Id.,* see also Rule 4(a), N.D.R.App.P.

Although the notice of appeal is defective by not stating an appealable order, which deprives the Supreme Court of jurisdiction, it is the greater 90–day limit which should ultimately determine the action. *Bye v. Federal Land Bank Ass'n., supra,* 422 N.W.2d at 399. Where the Supreme Court was presented with a notice of appeal that was filed after the 60–day initial-filing period, but within the 30–day period in which the trial court could find excusable neglect, the case was remanded to the trial court for consideration of excusable neglect under Rule 4(a), N.D.R.App.P. *Dehn v. Otter Tail Power Co.*, 248 N.W.2d 851, 856 (N.D. 1976).

Here, there was a motion for judgment notwithstanding the verdict, and in the alternative, for a new trial, which was denied on 4 June 1992. Joint Appendix, p. 34.

Sabot's attorney on this appeal was representing her at least by 13 August 1992 as noted in the trial court's order extending time to file transcripts. Joint Appendix, p. 170.[1] Therefore, Sabot had an attorney during the 30-day period in which the trial court could grant an extension of time to file the notice of appeal under *Dehn, supra*. There is nothing in the record indicating that a motion for an extension of time to file a proper notice of appeal or, rather, to amend the notice of appeal, was ever made. Sabot's counsel notes only that the 60-day period for filing a notice of appeal from the 4 June 1992 order had run, and makes no argument or even mention of the additional 30 days in which an extension could have been granted. Reply Brief of Appellant, p. 1.

The Supreme Court has often chosen to overlook a failure to comply with the Rules of Appellate Procedure, especially when the records and briefs on the merits are filed and the case is ready to be heard, *Appeal of Dickinson Nursing Center*, 353 N.W.2d 754, 756 (N.D.1984), or when a missing document was prepared by the opposing party and filed with the court, *Matter of Estate of Raketti*, 340 N.W.2d 894 (N.D.1983). However, the Supreme Court has also stated:

> We have repeatedly warned that all appellate rules must be complied with.... The rules must be treated respectfully, and we do not intend our admonitions to be treated as "empty noise."
>
> ...

*Raketti, supra*, 340 N.W.2d at 898 [citations omitted]. Here the appellant did not comply with Rule 3(c), N.D.R.App.P., and made no attempt to cure this defect even after obtaining an attorney. See *State v. Freed*, 340 N.W.2d 172, 175 (N.D.1983).

The question of prejudice to the opposing party has been viewed as the first question to be asked where a party has failed to comply with the Rules of Appellate Procedure. *Freed, supra*. This has been the common element in cases where a proce-

dural defect was overlooked by the Supreme Court, although often left unstated. See *Raketti, supra; Dickinson Nursing Center, supra*. Although any prejudice to the appellees caused by the appellant's failure to comply with Rule 3(c), N.D.R.App.P., is difficult to assess after the appellees have won the case on the merits, the fact remains that this is a jurisdictional issue which should not be treated lightly. See *Vorachek, supra; Bye, supra*.

---

**1.** Sabot's attorney states that he became Sabot's attorney on 12 August 1992. Reply Brief of

Appellant, p. 1.